# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1466

_____

Kelvin D. Peebles,                           *
                                             *
              Appellant,                     *
                                             *
       v.                                    *  On Appeal from the United
                                             *  States District Court for the
John E. Potter,[1] Postmaster General,       *  Eastern District of Missouri.
United States Postal Service,                *
                                             *
              Appellee.                      *

_____

Submitted: September 11, 2003

Filed:  January 8, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

BEAM, Circuit Judge,

_____

[1]Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, John E. Potter has been substituted for his predecessor William Henderson.

Kelvin Peebles appeals from the district court's[2] adverse grant of summary judgment on his claims arising under the Rehabilitation Act of 1973 (the Act), 29 U.S.C. §§ 701 et seq. (as amended). We affirm.

## I.    BACKGROUND

We recite the facts, as we must at this juncture, in the light most favorable to the non-moving party, Peebles. Coleman ex rel. Coleman v. Parkman, 349 F.3d 534, 536 (8th Cir. 2003). Peebles worked for the University City Branch of the United States Postal Service in St. Louis, Missouri, as a letter carrier. In October 1993, he fell while carrying mail and suffered groin and back injuries that inhibited his ability to carry out his duties. Peebles filed for compensation benefits with the Office of Workers' Compensation Programs (OWCP) and continued to work in a "limited duty" capacity. The OWCP denied Peebles' claim for benefits in June 1995, concluding Peebles' continuing injuries were non-occupational. That same month, he sought a "light-duty" assignment with the Postal Service.[3] Peebles spoke with Pamela Northcross, the appropriate supervisor, about his light-duty request. Northcross reviewed his physician-imposed work restrictions and concluded that no available work would accommodate the limitations. Northcross then placed Peebles on "leave without pay" status and told him that he would need to have his restrictions lessened before the Postal Service could accommodate his requirements.

---

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[3]The terms "limited duty" and "light duty" have different meanings under the Postal Service's administrative structure. Limited duty refers to the modifications of a position required by law when an employee suffers an occupational injury or illness. See 5 U.S.C. § 8151(b). Light duty is a form of less strenuous activity available to those employees whose limitations are not due to occupational injury or illness.

For the next two months, Peebles renewed his requests for light-duty assignments and received no response. Peebles then filed a grievance with the union. The union agreed with the Postal Service, concluding Peebles' could not be accommodated given his restrictions. It accordingly closed the case in January 1996.

In June 1997, Peebles obtained a different physician who diagnosed him with sacroiliitis and/or spinal enthesopathy. After rehabilitation, that physician gave Peebles a new set of less-restrictive work prohibitions.

In October 1997, armed with his revised work restrictions, Peebles met with Ferman Harris, who was then the supervisor in charge of the University City Branch. Harris told Peebles that under Postal Service regulations he could not be considered for a light-duty assignment until he provided documentation verifying that his physician-imposed restrictions had persisted during the time he had been absent from duty—June 1995 to October 1997. Peebles never complied with the Postal Service's substantiation rule.

In November 1997, Peebles contacted an EEO counselor to discuss his situation. In January 1998, Peebles filed a formal EEO complaint alleging disability discrimination based on the Postal Service's failure to accommodate his disability with a light-duty assignment in October 1997. Peebles filed this suit in May 1999 and exhausted all applicable administrative remedies.

In December 1999, the Postal Service terminated Peebles' employment. It cited Postal Service regulations allowing for "separation" in the event an employee is in leave without pay status for more than one year and there is no cause to expect the employee's return.

Peebles filed his claim under the Rehabilitation Act, claiming the Postal Service's refusal to place him in a light-duty position in October 1997 constituted a

failure to reasonably accommodate his disability. Peebles argued the Postal Service's failure to engage in an interactive process, whereby the employer and the employee determine what reasonable accommodations can be made, was sufficient to withstand the Postal Service's motion for summary judgment. Peebles also claimed his termination in December 1999 was retaliatory.

The district court granted summary judgment to the Postal Service on both counts. It found the Postal Service had no obligation to accommodate Peebles in October 1997 because he failed to comply with section 513.362 of the Employee and Labor Relations Manual, which states: "[f]or absences in excess of 3 days, employees are required to submit documentation or other acceptable evidence of incapacity for work." As to the retaliation claim, the district court found Peebles had presented no evidence of pretext in response to the Postal Service's articulated reasons for discharging him in 1999. Peebles timely appealed.

Peebles claims the district court erred in requiring that he show compliance with, or the non-applicability of, the substantiation rule, because such a showing is beyond the prima-facie-case requirements for a reasonable accommodation claim. Peebles also asserts he produced sufficient evidence to avoid summary judgment on the retaliation claim.

Jurisdiction was proper in the lower court pursuant to 28 U.S.C. § 1331, and it is proper here pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

"'We review a grant of summary judgment *de novo*, affirming the decision of the district court only if no genuine issue of material fact exists, entitling the moving party to judgment as a matter of law. In considering whether summary judgment was appropriate, we view all evidence in the light most favorable to the nonmoving party,

-4-

drawing all justifiable inferences in his favor.'" Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002) (quoting Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 657 (8th Cir. 2001)) (citation omitted). We may affirm the judgment of the district court on any ground the record supports. Habib v. NationsBank, 279 F.3d 563, 566 (8th Cir. 2001).

## A. Reasonable Accommodation

The Rehabilitation Act provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination . . . under any program or activity conducted by . . . the United States Postal Service." 29 U.S.C. § 794(a). To make out a claim under the language of the Rehabilitation Act against the Postal Service, Peebles needs to show he was "disabled," was "otherwise qualified," and was the victim of "discrimination" "solely" because of his disability. Peebles' disability status is not in dispute.

Unlike the Americans with Disabilities Act of 1990 (ADA), the definition of "discrimination" is not codified in the Rehabilitation Act. See 42 U.S.C. § 12112(b) (defining discrimination). However, section 794(d) of the Rehabilitation Act, added in 1992, adopts the standards applied under the ADA to determine whether a violation of the former has occurred. The Postal Service regulations, promulgated under the authority of section 794(a), follow this lead. See 39 C.F.R. § 255.5 (2003) (Postal Service regulation stating EEOC regulations contained in 29 C.F.R. part 1614 apply to employment with the Postal Service); 29 C.F.R. § 1614.203 (2003) (EEOC regulation adopting standards contained in regulations promulgated under the ADA at 29 C.F.R. part 1630); 29 C.F.R. §§ 1630.4-1630.13 (2003) (defining "discrimination" by describing various acts).

Under the Act, the ADA, and the Postal Service and EEOC regulations, numerous kinds of discrimination emerge. Two means of discrimination are relevant

to this case: disparate treatment (i.e., intentional discrimination) and the failure to make reasonable accommodations.  Depending on which kind of discrimination is at issue, different burden-shifting analyses are applied.  See Fenney v. Dakota, Minnesota & E. R.R. Co., 327 F.3d 707, 711-13 (8th Cir. 2003) (stating the same with regard to such claims under the ADA).[4]  The allocation of the burdens of production and persuasion between the plaintiff and the defendant, in turn, affects the analysis of a summary judgment motion made by the defendant.

In disparate treatment cases, a similarly situated disabled individual is treated differently because of his disability than less- or non-disabled individuals.  The key element is discriminatory intent.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000).  As such, the familiar three-step McDonnell Douglas approach is applied where no direct evidence of discrimination is available.  Id. at 142-43; Norcross v. Sneed, 755 F.2d 113, 117 & n.5 (8th Cir. 1985) (holding McDonnell Douglas is applicable in disparate treatment cases under the Rehabilitation Act).

The Postal Service premises its arguments on a McDonnell Douglas approach.  Specifically, the Postal Service claims Peebles has shown no circumstances creating an inference of intentional discrimination surrounding the adverse employment action he suffered in October 1997.  Thus, it argues, no prima facie case was presented.  Alternatively, the Postal Service claims no evidence of pretext was offered after it articulated a legitimate, non-discriminatory reason for the discharge—Peebles' non-compliance with its substantiation rule.

Peebles, though, articulates his claim as one of a failure to accommodate in his complaint and throughout his brief.  The failure to make reasonable accommodations

---

[4]With one irrelevant exception, noted below at post n.5, Rehabilitation Act claims and claims under the ADA are evaluated the same; thus, cases dealing with each are interchangeable.  See, e.g., Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir. 1996).

in the employment of a disabled employee is a separate form of prohibited discrimination. Under the Act and its regulations, such discrimination occurs if "a covered entity [does] not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. 1630.9(a) (2003); accord Ballard, 284 F.3d at 960; Dropinski v. Douglas County, 298 F.3d 704, 707 (8th Cir. 2002).

Reasonable accommodation claims are not evaluated under the McDonnell Douglas burden-shifting analysis. Rather, "a modified burden-shifting analysis" is applied. Fenney, 327 F.3d at 712 (collecting cases in which this analysis has been used); see also US Airways, Inc. v. Barnett, 535 U.S. 391, 401-06 (2002) (expressing approval for and utilizing a similar analysis). This is so because a claim against an employer for failing to reasonably accommodate a disabled employee does not turn on the employer's intent or actual motive. The McDonnell Douglas line of cases, however, is aimed at fleshing out this "'elusive factual question of intentional discrimination.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.8 (1981)); accord Reeves, 530 U.S. at 141 (stating that "[w]hen a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision;" thus, McDonnell Douglas is utilized to alleviate the burden of dealing with this "sensitive and difficult" question that is seldom subject to direct evidence) (quotations omitted).

In a reasonable accommodation case, the "discrimination" is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations. The Act compels employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136

(8th Cir. 1999); 29 C.F.R. § 1630, app. (2003) ("The reasonable accommodation requirement is best understood as a means by which barriers to the equal employment opportunity of an individual with a disability are removed or alleviated."). The concern is compelling behavior, not policing an employer's actions that, when accompanied by an invidious discriminatory intent, are unlawful. As such, it is not the employer's discriminatory intent in taking adverse employment action against a disabled individual that matters. Rather, discrimination occurs when the employer fails to abide by a legally imposed duty. The known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability. See Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1219-20 (8th Cir. 1999) (Lay, J., dissenting), cited in Fenney, 327 F.3d at 712. To hold otherwise would create an anomaly—a wheel-chair bound employee, properly owed a duty of accommodation, would have to show that the employer's failure to accommodate the employee's inability to walk was caused by the employee's inability to walk. The Act and our case law do not impose such a requirement.[5] Thus, we hold McDonnell Douglas does not apply to this case;

---

[5]We are mindful of the sole motivation language of the statute: the discrimination has to occur "solely by reason of her or his disability." 29 U.S.C. § 794(a); see Amir v. St. Louis Univ., 184 F.3d 1017, 1029 n.5 (8th Cir. 1999) ("Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff."); Soledad v. United States Dep't of Treasury, 304 F.3d 500, 504-05 (5th Cir. 2002) (rejecting notion that 1992 amendments to Rehabilitation Act adopted ADA's standard of "motivating factor" causation). Even so, it is true that, as here, the employer could articulate a reason unrelated to a person's disability that animated its failure to accommodate his limitations. Indeed, it would be easy to say the Postal Service's failure to act was not "solely by reason of" Peebles' disability. However, the sole motivation requirement, in the first place, addresses motivation from the disability, which as we have explained is irrelevant to (and unlikely to accompany) the employer's failure to accommodate the employee's disability.

therefore, the Postal Service's arguments as to the prima facie case and pretext are unavailing.

This does not mean Peebles' claim survives summary judgment. A reasonable accommodation that imposes no undue burden on the employer must still be shown.[6] In Barnett, the Court spoke of the proper method of dealing with this element of the plaintiff's case. The Court stated that the plaintiff's burden, upon a defendant's motion for summary judgment, is only to show that the requested accommodation is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." 535 U.S. at 401. Upon such a showing, the employer is left to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. at 402.

In Barnett, the plaintiff had been assigned to a position within the company after he had become disabled. He was able to perform the duties of that position, but, when senior employees sought the position, he lost his job. Barnett claimed the employer should have made an exception to its seniority rule as a reasonable accommodation of his disability. Id. at 394-95. The district court granted the

---

[6]There are other elements to Peebles' claim that we decline to address. For example, all discrimination cases under the Rehabilitation Act require that the person be an "otherwise qualified individual." Though we do not address this element, there is an obvious overlap between it and the reasonableness of the accommodation when the "discrimination" claimed is the failure to make reasonable accommodations. The definition of "otherwise qualified individual" requires, in some instances, a consideration of whether reasonable accommodations will make that person qualified. See 29 C.F.R. § 1630.2(m) (stating that a "qualified individual" must "with or without reasonable accommodation, [be able to] perform the essential functions of such position"); accord Heaser v. Toro Co., 247 F.3d 826, 830 (8th Cir. 2001) (defining "qualified individual" under the ADA). As such, the issue of what accommodations are reasonable can be relevant to both elements of a plaintiff's claim. Thus, if a requested accommodation is unreasonable, then the employee has not shown "discrimination," and he may not be an "otherwise qualified individual."

employer's motion for summary judgment, stating any exception would pose an undue burden on the operations of the employer. Id. at 395. An en banc panel of the Ninth Circuit disagreed and reversed, stating the presence of the system was only a factor to be considered in the undue burden analysis. Id. The Supreme Court disagreed with both lower courts and held, as stated above, that the plaintiff must first show reasonableness before the question of undue burden becomes relevant. The Court went on to find that, "in the run of cases" such an accommodation is not reasonable, but "[t]he plaintiff remains free to present evidence of special circumstances that make 'reasonable' . . . [an] exception [to such a rule] in the particular case. And such a showing will defeat the employer's demand for summary judgment." Id. at 394.

Peebles' case falls under Barnett. Because Peebles has not created a genuine question of fact as to the applicability of or his compliance with the substantiation rule,[7] his request for an assignment to a light-duty position would require the Postal Service to make an exception to that rule. Recast in this light, the accommodation Peebles requested is within the same category as the accommodation at issue in Barnett—making an exception to an applicable work rule even though the disabled employee's non-compliance is not caused by the employee's disability. See id. at 412-13 (Scalia, J., dissenting).

We have serious doubts as to whether excusing such non-compliance would even be an accommodation under the Act. According to the Court in Barnett, the language of accommodation "conveys the need for effectiveness," id. at 400, i.e., the "ability [of the accommodation] to meet an individual's disability-related needs." Id.

---

[7]Peebles does argue that the rule is inapplicable or, if applicable, he has complied with it. Obviously, if the rule were inapplicable or satisfied, then the accommodation would not require the employer to excuse his non-compliance. In such an instance, the assignment requested may have been reasonable for purposes of summary judgment. We, though, agree with the district court and find Peebles' arguments unpersuasive and his evidence insufficient to create a genuine issue of fact.

at 399. Here, while excusing Peebles' non-compliance would, in a broad sense, enable the employee to go back to work, it does not enable the disabled employee to stand on the same footing as the employee who is not disabled, for the non-compliance has nothing to do with the disability. Thus, it does not serve the employee's "disability-related needs." We do not read the Act as requiring the employer to level the playing field beyond those undulations that are related to the person's disability. See Kiel, 169 F.3d at 1136 ("A reasonable accommodation should provide the disabled individual an equal employment opportunity, including an opportunity to attain the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled."); Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687 (8th Cir. 2003) ("Where the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought.").

In looking at the facts and outcome of Barnett, though, we are unable to conclude that excusing Peebles' non-compliance would not be an accommodation. The seniority system at issue in Barnett was a barrier to reassignment and the disabled employee's failure to reach such seniority was not in any way related to his disability. Disregarding the seniority system apparently was held by the Court to constitute an accommodation there. As such, we follow the Court's lead and hold an accommodation would lie in pardoning Peebles' non-compliance with the substantiation rule. See Giebeler v. M & B Assocs., 343 F.3d 1143, 1149-51 (9th Cir. 2003) (reaching similar conclusion under Fair Housing Amendments Act given Barnett).

Under Barnett, an exception to a rule that is not necessitated by the individual's disability is presumptively unreasonable. See Barnett, 535 U.S. at 402-03 (holding modification of seniority system would, ordinarily be unreasonable); accord Allen v. Interior Const. Servs., Ltd., 214 F.3d 978, 982 (8th Cir. 2000) ("[A]n accommodation

-11-

is reasonable only if it is related to the accommodated individual's disability"); Amir, 184 F.3d at 1029 (holding accommodation that was unrelated to the plaintiff's disability was not a reasonable accommodation under the ADA).

After a careful review of the record, we conclude Peebles has not come forward with sufficient evidence to create a genuine issue of fact as to the reasonableness of the measure he, in effect, requested. In the words of Barnett, he has not met his "burden of showing special circumstances that make an exception . . . reasonable in the particular case." 535 U.S. at 406. It was entirely within the Postal Service's power to require Peebles, who had been gone from work for approximately two years, to verify why he had been gone for so long. Peebles has offered no evidence that the rule has not been adhered to in the past or that the Postal Service's adherence to the rule in his case was otherwise unreasonable. As such, the Postal Service was not required to provide Peebles with a light-duty position.

**B.    The Interactive Process**

Peebles also claims summary judgment was improvidently granted on his reasonable accommodation claim because the Postal Service failed to engage in the interactive process required by our case law. See, e.g., Ballard, 284 F.3d at 960. Our cases do not, however, impose liability merely for failing to fulfill this procedural aspect of the duty to reasonably accommodate. Because we have held, as a matter of law, that the accommodation Peebles requested was unreasonable, "any discussion concerning the interactive process under these facts is superfluous." Dropinski, 298 F.3d at 710.

**C.    Retaliation**

Peebles finally asserts the district court erred in granting summary judgment on his claim of retaliation based on his termination in December 1999. At that point,

it had been four years since Peebles had last been to work, over two years since Peebles was initially denied a light-duty assignment, twenty-three months since Peebles filed his EEO Complaint, and seven months since this suit was filed. The removal letter stated that, under applicable Postal Service guidelines, employees on leave without pay status in excess of one year could be separated unless there was cause to expect the employee would return within a reasonable time after the one year. Stating there was no reason to expect Peebles' return, the Postal Service ended the employment relationship.

Retaliatory intent is the centerpiece of retaliation claims and, thus, McDonnell Douglas is utilized to show this intent where no direct evidence exists. See Amir, 184 F.3d at 1025-26. Even assuming Peebles did establish a weak prima facie case of retaliation, he has offered no evidence of pretext in spite of a quite obvious non-retaliatory reason for the discharge. On these facts, we conclude summary judgment was appropriate. See Reeves, 530 U.S. at 148.

## III.  CONCLUSION

Accordingly, we affirm the judgment of the district court.

Bye, Circuit Judge, concurring.

As a conceptual matter, I agree that U.S. Airways, Inc. v. Barnett can be read to apply to cases where the accommodation the plaintiff seeks is an exception from other workplace policies or rules, such as the substantiation rule in the instant case. See 535 U.S. 391, 397-403 (2002). In my view, however, Kelvin D. Peebles has failed to make a facial showing he *needs* to be exempted from the substantiation rule, and so I take issue with the need to conduct the reasonable-accommodation analysis in the first instance.

It is axiomatic, to survive summary judgment, an employee bringing a reasonable-accommodation claim under the Rehabilitation Act must first establish a prima facie case. Fenney v. Dakota Minn. & Eastern R.R. Co., 327 F. 3d 707, 712 (8th Cir. 2003). The employee must show he is disabled within the meaning of the statute, has suffered an adverse employment action, and is qualified for the job with or without accommodation. Id. See also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

The fact we apply the modified burden-shifting analysis does not relieve the plaintiff of this threshold burden. Indeed, we perform the analysis only *after* the plaintiff, in making a showing of the third step of the prima facie case, produces evidence he could perform the essential functions of the job with the employer's accommodation. See Fenney, 327 F. 3d at 712, 718. It is only then we ask whether the accommodation is reasonable, and if so, shift the burden to the employer to show the accommodation would impose an undue burden.

As our precedent stands, moreover, the plaintiff fails to make a prima facie case if he fails to show he *needs* an accommodation. See Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir. 2003) (affirming summary judgment for employer because employee failed to make an evidentiary showing she needed the requested transfer); Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687-688 (8th Cir. 2003) (affirming summary judgment for employer because, in requesting an accommodation unrelated to his disability, the employee failed to make a prima facie case). While only implicit in our cases, necessity has been an explicit requirement of the plaintiff's prima facie case in the Sixth Circuit. See Gaines v. Runyon, 107 F.3d 1171, 1175 (6th Cir. 1997) (listing the need for the accommodation as an enumerated element of the prima facie case). As that court has explained, there must be a showing of a causal connection between the accommodation and the disabled employee, so the employee would be denied the employment benefit but for the accommodation. See id. at 1175-76. See

-14-

also <u>Smith Lee & Assocs., Inc. v. City of Taylor, Mich.</u>, 102 F.3d 781, 795 (6th Cir. 1996) (applying the same concept of necessity to claims under the FHAA).

To reiterate, the plaintiff must make a prima facie case before the court conducts the burden-shifting reasonable-accommodation analysis. It follows, because necessity is part of the prima facie case, the showing the plaintiff needs the accommodation precedes the question whether the accommodation was reasonable. <u>See</u> <u>Burchett</u>, 340 F.3d at 518 (granting summary judgment without conducting analysis); <u>Wood</u>, 339 F.3d at 687-688 (same); <u>Gaines</u>, 107 F.3d at 1176 (stating it is error to address the question of reasonable accommodation if the plaintiff fails to establish he needs the accommodation).

I recognize <u>Barnett</u> implicitly carves out an exception to the necessity requirement. There, the Supreme Court concluded Barnett's request to be exempted from his employer's seniority rules was subject to reasonable-accommodation analysis even though the rules were unrelated to Barnett's disability limitations. <u>U.S. Airways, Inc. v. Barnett</u>, 535 U.S. 391, 397-403 (2002). An employee, therefore, should now be able to state a prima facie case even if a request for an exemption not directly needed to accommodate his *limitations* is at issue. That is to say, no longer must a plaintiff show he needs the accommodation to *perform* the work.

I hold the view, however, <u>Barnett</u> has not entirely abolished the necessity requirement. Barnett needed to be exempted from the seniority rules because such rules themselves caused him to be laid off. Absent an enforcement of the rules, he would have kept his job. Stated in terms of causation, Barnett would have lost his position but for the accommodating exemption. Thus, while the accommodation need not be essential to accommodate the employee's disability limitations, it must minimally be necessary to accommodate the *disabled employee*. Even after <u>Barnett</u>, the employee must show he would lose his employment status but for the accommodation he seeks.

-15-

To read <u>Barnett</u> otherwise is to indulge unreasonable accommodation requests. Any employee whose disability did not prevent him from obeying a workplace rule and whose employer then took adverse action against him for breaking the rule could force a court to examine, and the employer to defend, the reasonableness of refusing to excuse the violation. Such a formalistic extension of <u>Barnett</u> could apply even to an employee who brazenly refuses to follow basic disciplinary rules unrelated to his disability. Clearly, the Supreme Court could not have intended such a result.

Here, Mr. Peebles has failed to show he could not be reactivated but for the accommodation he seeks. Stated another way, he has not shown that the only way for him to regain his job is for the Postal Service to grant him the exemption. On the contrary, the evidence shows that at any point during his two-year absence, and even after this dispute arose, it was within his power and control to regain his position simply by bringing a note from a doctor. The actual cause of his continued unemployment, then, is his own dereliction, not his employer's enforcement of the substantiation rule. In reality, Mr. Peebles does not need to be accommodated, he wants to be excused. The attention of the courts and the succor of the Act, however, should be reserved for those who cannot, as distinguished from those who won't.

_____