ESSLING'S HOMES PLUS, INC., A MINNESOTA CORPORATION, d/b/a Scenic Hills Alternative Care; Judith Essling; and Bridget Essling, Plaintiffs,

v.

CITY OF SAINT PAUL, A MINNESOTA CORPORATION, Defendant.

No. CIV.04–1115(MJD/JGL).

United States District Court, D. Minnesota.

Nov. 12, 2004.

Joanne M. Haase, Peter Daniel Gray, and Timothy J. Nolan, Rider Bennett, Minneapolis, MN, for Plaintiffs.

Eric Douglas Larson, Saint Paul City Attorney, St. Paul, MN, for Defendant.

## MEMORANDUM OF LAW & ORDER

DAVIS, District Judge.

## I. INTRODUCTION

This matter is before the Court on the motion of Defendant City of Saint Paul ("the City") for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court heard oral argument on September 8, 2004. For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part. The Court shall grant summary judgment as to the dismissal of Plaintiffs Judith Essling and Bridget Essling, but it denies the remainder of Defendant's motion.

## II. FACTUAL BACKGROUND

This suit involves two properties in the same neighborhood: 2187 Bonnie Lane (the "Bonnie Lane" residence) and 2170 Snowshoe Lane (the "Snowshoe Lane" residence). Plaintiffs assert claims under the Fair Housing Act and Fair Housing Amendments Act (collectively, the "FHAA"), as well as the Equal Protection clauses of the United States and Minnesota Constitutions.

## A. Bonnie Lane Residence

In 1990, Plaintiff Judith Essling constructed a single-family home at 2187 Bonnie Lane, Saint Paul, Minnesota (the "Bonnie Lane" residence). The Bonnie Lane residence has three levels, each of which has at least one bedroom and a bathroom. The property is located in a neighborhood zoned R–LL (Residential Large Lot), which is a single-family residential zoning district. *See* ST. PAUL LEG. CODE §§ 60.406–409 (2003) (concerning R–LL districts).

The City's zoning code permits buildings in a single-family residential zoning district to have only one dwelling unit. *See* ST. PAUL LEG. CODE §§ 60.204 (2003) ("D.Dwelling"), 60.406 (2003) (permitting low-density, one-family dwellings in areas zoned R–LL), & 60.412(1) (2003) (permitting "[o]ne-family detached dwellings"). The Saint Paul Legislative Code defines a dwelling unit as "[a] building, or portion thereof, designed for occupancy by one family for residential purposes used or intended to be used for living, sleeping and cooking or eating purposes." ST. PAUL LEG. CODE. § 60.204.D (2003).

In 1992, a second kitchen was added to the lower level of the Bonnie Lane residence. In September of that year, the City's Licensing, Inspections, and Environmental Protection ("LIEP") department discovered that the home's lower level was rented out to tenants, and it concluded that the residence was two separate dwelling units in violation of the neighborhood's zoning codes.

In a letter dated October 6, 1992, the City's LIEP department ordered that the additional tenants vacate the premises, and it ordered the removal of a lock separating the upper and lower levels. The letter did not specify removal of either kitchen. Judith Essling complied with the City's order, and the City concluded its investigation.

In April 1993, the Minnesota Department of Human Services ("DHS") issued Bonnie Lane its first adult-foster-care license, for use on the lower level of that building. The DHS informed the City of Plaintiff's intent to use the home for adult foster care. *See* MINN. R. 9555.6125, subp. 6 (2003) (requiring DHS to notify local zoning administrators of license applications). An adult foster care home is a residence licensed by the State of Minnesota, providing 24–hour foster care to no more than four functionally impaired residents. MINN. R. § 9555.5105, subp. 5 (2003). Under the Saint Paul Legislative Code, adult foster care is a permissible use of homes in R–LL zones. ST. PAUL LEG. CODE § 60.412(9) (2003).

Plaintiff Essling's Homes Plus, Inc., ("Homes Plus") was permitted to use the Bonnie Lane residence as a foster care home housing elderly persons who require 24–hour assistance. All of the residents are unable to live alone due to their physical, emotional, or developmental impairments. These impairments include blindness, dementia, and Alzheimer's disease. Many of those residents have limited mobility and rely on wheelchairs, walkers, and/or electric hospital beds.

In May 1998, the Minnesota DHS issued a second foster-care license for the property. The license was granted for the following location, as written on the application: "2187 Bonnie Lane Apt. 2." The DHS has stated that it issued the second license "on the commissioners' understanding that the setting was a duplex, but it is not a duplex." Plaintiffs deny that Judith Essling wrote the notation of "Apt. 2" on the application, noting that the handwriting appears to different in that portion. Plaintiffs also deny that the DHS was misled into thinking that the residence was divided, noting that the application form indicated that the Bonnie Lane residence was

a "single-family" house and that the box for multi-family homes remained unchecked.

In September 2003, the City investigated complaints that the use of the Bonnie Lane residence was in violation of the applicable R–LL zoning. On September 19, 2003, the City inspected the Bonnie Lane home. The City determined that eleven persons were residing at 2187 Bonnie Lane—ten clients and one staff person. The Saint Paul Legislative Code limits single-family occupancy to four persons who are unrelated. St. Paul. Leg. Code § 60.207.F ("Family") ("Every additional group of four (4) or fewer persons living in such housekeeping unit shall be considered a separate family for the purpose of this code."). But for adult foster care homes, state law preempts the City's occupancy limits and permits six unrelated persons (five clients and one staff person) to reside in a single-family residence. Minn. Stat. § 245A.11, subd. 2 (2003) (later amended by 2004 Minn. Sess. Law Serv. Ch. 288 (West) (H.F.2277)).

The Minnesota DHS also discovered that ten residents were living in the Bonnie Lane residence. On October 16, 2003, the Minnesota DHS mailed a violation letter placing Plaintiffs' licenses on conditional status for six months and requiring that the number of Bonnie Lane residents be reduced to five by April 15, 2004.

On September 25, 2003, three weeks before the DHS's violation letter, the City sent Plaintiffs a letter stating that the Bonnie Lane residence constituted "a building with two dwelling units" because "its lower level group of rooms [were] designed for living, sleeping and cooking or eating and its separate group of rooms [were] designed for living, sleeping and cooking or eating on the second and third levels." The City also found that because the residence had two kitchens, the lower-level residents "were able to live, sleep,

cook, and eat without using the living, sleeping, cooking, and eating facilities on the second and third levels," and vice versa. The City then ordered Plaintiffs to "remove one of the kitchens in the building in its entirety."

On October 12, 2003, Plaintiffs appealed the Saint Paul zoning administrator's Bonnie Lane decision to the Board of Zoning Appeals ("BZA"), which upheld that decision after a public hearing on November 24, 2003. Plaintiffs then appealed to the Saint Paul City Council, which upheld the BZA decision after a hearing on January 7, 2004.

### B. Snowshoe Lane Residence

The second residence at issue is located at 2170 Snowshoe Lane (the "Snowshoe Lane" residence), which is only a few blocks away from the Bonnie Lane residence. Both properties are located in an R–LL (Residential Large Lot) zoning district, which is restricted to single-family properties; both properties are operated by Plaintiff Essling's Homes Plus. The primary issue regarding the Snowshoe lane residence is the City's denial of Plaintiff's request to install a second kitchen.

On July 23, 2003, Judith Essling filed a general building permit application to "remodel attached garage—make bedroom & kitchenette." In this handwritten portion of the application, a line was drawn through the word "kitchenette." The City's LIEP department approved the application and issued the permit with the following remarks:

> OK per zoning. No 'kitchenette' permitted in basement. (None shown on current plan).... No 2nd dwelling unit permitted.

In February 2004, Judith Essling told City LIEP Zoning Specialist Hardwick that she hoped to install a sink, garbage disposal, and ceramic cook top in the lower

level of the Snowshoe Lane residence. She asked Hardwick to allow the second kitchen as a reasonable accommodation to her clients. In an advisory letter dated February 19, 2004, Hardwick informed Essling that "adding a kitchen to the lower level would not be allowed because that would, when combined with the bedrooms, bathroom and living room on that level, in effect create a second dwelling unit in the house."

The City has admitted in its responses to discovery that the City's zoning ordinances "do not state that adding a second kitchen to a single-family residential dwelling converts the property into a duplex or multi-family residential dwelling." Plaintiffs have also provided evidence showing that over 100 single-family residences in Saint Paul have two kitchens.

## III. DISCUSSION

### A. Standing

As a threshold issue, Defendant argues that Plaintiffs Judith Essling and Bridget Essling do not have standing to sue in their individual capacities. Rather, Defendant argues, the real party in interest is their co-owned corporation, Plaintiff Essling's Homes Plus, Inc.

A plaintiff's standing is subject to the following two limitations:

(1) constitutional limitations on federal jurisdiction, requiring a "case" or "controversy" under Article III, § 2, of the United States Constitution and

(2) prudential limitations on its exercise. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To satisfy the "case or controversy" requirement under Article III, a plaintiff must show (1) an "injury in fact"; (2) that the injury is fairly traceable to the alleged unlawful act or acts; and (3) that the injury would be redressed by a favorable decision. *Bennett v. Spear,* 520

U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

■ Generally, even a sole shareholder of a corporation has no standing to sue on behalf of that corporation. *See Potthoff v. Morin,* 245 F.3d 710, 716–17 (8th Cir.2001) (holding that sole shareholder did not have standing for § 1983 claim). If the harm at issue is directed toward the corporation, the corporation remains the only entity with standing to sue. *Id.* at 716. A shareholder claim may survive only if he or she has a personal, direct, distinct, and non-derivative injury. *Id.* at 717–18.

Plaintiffs Judith Essling and Bridget Essling have not demonstrated that they have suffered an injury that is direct, distinct, and nonderivative from that allegedly suffered by their corporation. The only potential harm that they, as individuals, might suffer is derivative of the potential injury to Essling Homes Plus. As such, Plaintiffs Judith Essling and Bridget Essling do not have standing as individuals and shall be dismissed from this action.

Conversely, it is undisputed that the corporation Essling Homes Plus has proper standing and may continue as a Plaintiff in this suit.

### B. Limitation to Administrative Record

■ Defendant next argues that the record before the Court is limited to the administrative record as it was provided to the various agencies. The additional evidence at issue includes affidavits, from friends and relatives of the Bonnie Lane and Snowshoe Lane residents, that Plaintiffs have submitted in support of their claim that the residents are handicapped for the purposes of the FHAA.

The Eighth Circuit has not specifically addressed the extent to which the record is limited, if at all, in FHAA claims. It has

decided past Constitutional challenges to zoning decisions by considering only the administrative record before it. *E.g., Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir.1990) (Fourteenth Amendment suit regarding denial of conditional use permit, allowing—but not requiring—the record to consist of administrative record). But the Eighth Circuit has more recently held that an administrative determination was properly **excluded** from a federal FHA action because that administrative determination posed "a danger of confusion and undue prejudice." *United States v. Big D Enters., Inc.*, 184 F.3d 924, 934 (8th Cir.1999) (citation omitted).

Several other federal courts have specifically held that cases challenging zoning decisions under the FHAA may include additional evidence not previously considered by an administrative agency. *E.g., Cohen v. Twp. of Cheltenham*, 174 F.Supp.2d 307, 315 n. 6 (E.D.Pa.2001) ("In most cases like that presently before the Court where a plaintiff sues a local zoning board under the FHAA, the parties provide additional evidence in the federal court action."); *United States v. City of Chicago Heights*, 161 F.Supp.2d 819, 830 (N.D.Ill.2001) ("[A] district court action challenging a zoning decision under the FHAA is a *de novo* proceeding in which evidence need not have been presented to the defendant or an administrative body in order to be considered."); *ReMed Recovery Care Ctrs. v. Twp. of Willistown*, 36 F.Supp.2d 676, 686 n. 8 (E.D.Pa.1999) ("Although [plaintiff] apparently did not present this evidence to the Board, this court is not limited to consideration of the record before the Board and may consider new evidence presented by either party."); *see Olson v. Largo–Springhill Ltd. P'ship*, 919 F.Supp. 847, 851–52 (D.Md.1995) (housing discrimination decision concluding that federal action is *de novo* proceeding that does not require consideration of administrative agency's findings or proceedings).

To fully consider the constitutional and statutory allegations regarding the zoning decision, this Court shall not limit its analysis to those materials considered by the administrative bodies. Rather, this Court shall consider additional evidentiary materials submitted by both parties.

### C. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citation omitted). The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). The Court views all admissible evidence, and draws all justifiable inferences, in favor of the nonmoving party. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir.2004).

### D. Reasonable Accommodation Under the FHAA

#### 1. Allegations under the FHAA

Plaintiffs allege that the City's actions constituted unlawful discrimination in violation of the FHAA. Specifically, the Complaint alleges that both that the City's decisions regarding the Bonnie Lane and Snowshoe Lane residences violate the FHAA, and that the City's ordinances "are

invalid on their face and in their application."

Congress intended for the FHAA to establish "truly integrated and balanced living patterns" in American neighborhoods. *Ventura Vill. v. City of Minneapolis,* 318 F.Supp.2d 822, 826 (D.Minn.2004) (quotation omitted). The FHAA protects persons with disabilities, providing that it is unlawful:

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter,

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

42 U.S.C. § 3604(f) (2003).

The FHAA defines "discrimination" as including "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

## 2. Residents' Status as Handicapped under FHAA

[3] As an initial matter, Defendant argues that the administrative record alone does not sufficiently demonstrate that the residents of the Bonnie Lane and Snow-shoe Lane properties are "handicapped" for the purposes of the FHAA. That statute defines the term "handicap" as

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such an impairment, or

(3) being regarded as having such an impairment,

42 U.S.C. § 3602(h) (2000).

The Eighth Circuit has not ruled on this particular issue, but the Third Circuit has held that nursing home residents are "handicapped" for the purposes of both the FHAA and the Rehabilitation Act, which has an identical definition of the term. *Hovsons, Inc. v. Twp. of Brick,* 89 F.3d 1096, 1103 n. 3 (3rd Cir.1996) (interpreting FHAA); *accord Wagner v. Fair Acres Geriatric Ctr.,* 49 F.3d 1002, 1010 (3d Cir. 1995) (interpreting identically phrased Rehabilitation Act). As the Third Circuit panel in *Wagner* stated:

Obviously, everyone that applies for admission to a nursing home does so because of his or her disabilities. Indeed, no one would be able to meet a nursing home's admissions requirements in the absence of some handicapping condition necessitating nursing home care.

*Id.*

Defendant argues that the administrative record, alone, does not show that any of the elderly residents are handicapped, and that Plaintiffs first provided support for that argument when they filed exhibits opposing the instant motion. These exhibits included declarations of the residents' friends and family members, attesting to their family members' health problems.

Because the Court has concluded that this additional evidence is admissible, and because these documents tend to show that the residents of the subject properties

are handicapped for the purposes of the FHAA, summary judgment is inappropriate on those grounds.

### 3. Facial Validity

■ The Complaint's first allegation under the FHAA is that the City's ordinances are "invalid on their face." "[T]o establish that an ordinance is facially invalid, a plaintiff must show that the accused ordinance treats someone protected by the FHA in a different manner than others are treated." *Marriott Senior Living Services, Inc. v. Springfield Twp.*, 78 F.Supp.2d 376, 388 (E.D.Pa.1999).

Plaintiffs' Complaint does not specify which ordinances, in particular, they allege are facially invalid. The only City ordinances that mention adult foster homes on their face actually promote (and do not discriminate against) those types of foster homes. *E.g.*, St. Paul Leg. Code §§ 60.206.F & 60.412. The remaining ordinances at issue, which govern zoning, appear to be facially neutral by applying equally to both handicapped and non-handicapped persons. *See Oxford House–A v. City of Univ. City*, 87 F.3d 1022, 1024 (8th Cir.1996) (holding a facially neutral zoning restriction to apply equally to all persons). In light of the above, the Court concludes that the ordinances at issue are not invalid on their face.

### 4. Accommodation Factors

Plaintiffs' primary argument is that the City failed to accommodate the residents' handicaps by ordering that the second kitchen in the Bonnie Lane property be destroyed and by denying Plaintiffs' request to build a second kitchen in the Snowshoe Lane property.

■ As an initial matter, Defendant contends that a reasonable-accommodation analysis under the FHAA requires the well-known burden-shifting analysis used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). But the Eighth Circuit has held that "[r]easonable accommodation claims are not evaluated under the *McDonnell Douglas* burden-shifting analysis." *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (interpreting Rehabilitation Act).[1] Rather, a court must apply "a modified burden-shifting analysis," in which discrimination is regarded as the failure to fulfill an affirmative duty of reasonably accommodating a disabled individual's limitations. *Id.* at 767.

The FHAA requires accommodation of a handicap if it is reasonable and necessary to afford a handicapped person the equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B) (2000). As such, a plaintiff faced with a motion for summary judgment bears the burden of making a prima facie demonstration that the accommodation requested is "reasonable on its face, i.e., ordinarily or in the run of cases." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir.2004) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)); *see Barnett*, 535 U.S. at 401–02, 122 S.Ct. 1516 (interpreting ADA). If the plaintiff makes such a showing, the defendant must "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Peebles*, 354 F.3d at 768 (quoting *Barnett*, 535 U.S. at 402, 122 S.Ct. 1516).

#### a) Reasonableness of Accommodation

■ Plaintiffs argue that their request for a zoning variance to allow two kitchens in an adult-foster-care home is a reasonable accommodation under the FHAA. An

---

1. Both parties agree that an FHAA case may apply reasoning and standards as outlined in cases brought under the ADA and Rehabilitation Act.

accommodation is reasonable if it is "necessary to afford a handicapped person the equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). In the context of the FHAA, demonstration that an accommodation is "necessary" requires a "showing that the desired accommodation will affirmatively enhance a disabled [person's] quality of life by ameliorating the effects of the disability." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. Ct.App.2003) (modification in original) (quoting *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir.2002)).

Any accommodation requested must be related to the limitation faced by the handicapped person or persons. *Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 687 (8th Cir.2003) (requiring "a causal connection between the major life activity that is limited and the accommodation sought"). A "reasonable" accommodation—by its very nature—constitutes "preferential" treatment for persons with disabilities, and that treatment is necessary to achieve the basic equal-opportunity goals created by laws such as the FHAA. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

Plaintiffs note a federal district court case that found:

> In case after case, courts have concluded that the FHA has been violated where municipalities have attempted to prevent or restrict persons with disabilities from living in the single family-zoned homes of their choice, *even when the number of residents exceeds the number of unrelated people permitted to live together under the applicable zoning ordinances.*

*Dr. Gertrude A. Barber Center, Inc. v. Peters Twp.*, 273 F.Supp.2d 643, 651 (W.D.Pa.2003) (emphasis added) (citing *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179 (E.D.N.Y.1993); *Oxford House v. Twp. of Cherry Hill*, 799 F.Supp. 450 (D.N.J.1992); *Oxford House–Evergreen v. City of Plainfield*, 769 F.Supp. 1329 (D.N.J.1991)).

Plaintiffs assert that the second kitchens are necessary because they would permit the residents to "fully use and enjoy the homes." With kitchens on each floor, the residents may assist in preparing meals and "even residents who use wheelchairs or walkers have a measure of independence and mobility in their daily living and enjoyment of home life." Defendant responds by asserting that although the additional kitchens may be "convenient," they are not "necessary" under the FHAA. 42 U.S.C. § 3604(f)(3)(B) (2000). Defendant also contends that an additional kitchen is not reasonably related to the handicaps of the residents.

The Court finds that Plaintiffs have provided sufficient evidence to demonstrate a prima facie case that the requested accommodations are reasonable and necessary for the purposes of the FHAA. Plaintiffs have provided affidavits and other evidence that many of the residents lack mobility and would benefit from the presence of two kitchens in the residence. The Court finds that, viewing the evidence in the light most favorable to Plaintiffs, the question of whether Plaintiffs have requested a reasonable accommodation is a genuine issue of material fact that may not be resolved on summary judgment.

**b) Undue Hardship Under the Circumstances**

Plaintiffs next argue that the City would not encounter undue financial or administrative burdens by permitting two kitchens in each of the residences. After a plaintiff demonstrates a prima facie showing that its accommodation request is reasonable, the burden shifts to the defendant

to show unreasonableness or undue hardship under the particular circumstances. *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir.2004). As such, a municipality is required to prove that it could not grant the variance without (1) "imposing undue financial and administrative burdens," *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 412, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); or (2) making "fundamental" or "substantial" modifications to its programs. *Alexander v. Choate*, 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (but a city must make "reasonable" modifications).

Defendants have failed to provide sufficient evidence that granting the requested accommodation would involve any financial or administrative burden, impose any undue hardship upon it, or require any fundamental or substantial modification to its programs. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578, 580 (2d Cir.2003) (noting that city failed to grant reasonable accommodation where "it would bear minimal financial cost from the proposed accommodation"). In contrast, Plaintiffs point to evidence appearing to show that more than 100 single-family homes in Saint Paul have more than one kitchen, demonstrating that granting this accommodation would not be an undue burden to the City.

Defendant's counsel stated at oral argument that the Court should not give the above-noted evidence any weight because it raises "confusion" with regard to the real issue in this case. The Court disagrees. The primary issues in this case are whether the requested accommodation is reasonable, and—if so—whether granting it would create an undue burden to the City. Plaintiffs have shown that the request is reasonable, and the City has failed to show that it would suffer an undue burden by permitting an accommodation

that over 100 other homes in Saint Paul currently enjoy.

The City stated that it is unaware of the legal status of the other 100 single-family homes in Saint Paul that have two kitchens, and making such a determination would require going to each of the sites to see if they are in compliance with the zoning code. But at issue before this Court are the two residences at issue, and the City would not be required to investigate every one of those 100 homes to effectively make a reasonable accommodation for those two residences. The Supreme Court has noted that another city had similarly failed to explain why it singled out a group home without taking similar action against other similarly situated homes. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 450, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Indeed, the Court held that the city's concerns "fail rationally to justify singling out a home such as [the group home] for the special use permit, yet imposing no such restrictions on the many other uses freely permitted [by other properties] in the neighborhood." *Id.* at 450, 105 S.Ct. 3249.

Defendant also notes, in an affidavit, that it has issued violation letters to some single-family homes that had two kitchens, but nearly all of these letters addressed other factors—besides second kitchens—indicating that the property was a two-family dwelling. These additional factors included the following: locking doors between the dwellings; indications that two unrelated persons were living in the owner's basement, which did not have an egress window; indications that the area was intended to be a separate dwelling unit; failure to apply for plumbing permits for kitchen and bathrooms; separate exterior doors into the second unit; denial of conditional use permit; and failure to meet

the minimum square footage requirements for the zone.

None of these additional factors is present in the either of the residences at issue; rather, the only violation alleged by the City is that each adult-foster-care residence includes (or would include) two kitchens. Other than this single characteristic, which is shared by more than 100 other homes in Saint Paul, the evidence does not demonstrate any other indicia that the spaces constitute separate dwelling units. Further, the City has not provided any evidence that it has declared any other property to contain a separate unit, where that unit contains nothing more indicative of separation than a mere second kitchen. Finally, the City admits that, under its ordinances, adding a kitchen to a single-family dwelling does not automatically convert the property into a duplex or multi-family residential dwelling.

This Court finds that questions of material fact exist as to whether the City would encounter undue hardship by permitting Plaintiffs to provide more than one kitchen in the residences at issue. As such, summary judgment in favor of Defendant is inappropriate.

### c) Conclusion

The Court concludes that Plaintiffs have provided sufficient evidence for a jury to conclude that the accommodation of providing a second kitchen in each property is reasonable and necessary for the purposes of the FHAA. The record also contains evidence that second kitchens on different levels of the residences would be beneficial to the residents, many of whom are elderly, have limited mobility, or are confined to wheelchairs, making stairs problematic. This showing demonstrates that an accommodation in the form of an additional kitchen would be an adjustment for the practical impact of the residents' disabilities. *See Giebeler*, 343 F.3d at 1150. As

such, Plaintiffs have made a prima facie demonstration that a second kitchen would enhance the residents' quality of life by ameliorating the effects of their disabilities.

Finally, the City has not demonstrated that granting permission to have two kitchens in each residence would constitute an undue burden or require a fundamental change in its programs. More than 100 homes in Saint Paul currently have two kitchens, and the City has not provided any evidence of a disciplinary action against a residence with two kitchens, but no other evidence indicative of a multiple-unit dwelling.

For these reasons, the Court concludes that summary judgment is inappropriate with regard to the Plaintiff's claims for reasonable accommodation under the FHAA.

### E. Equal Protection Under Minnesota and United States Constitutions

In addition to their claims under the FHAA, Plaintiffs also make claims under the Equal Protection clauses of the Minnesota and United States Constitutions. The Fourteenth Amendment to the United States Constitution prescribes that "[n]o State ... shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Similarly, the Minnesota Constitution ensures that no member of the state "shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." MINN. CONST. art. I, § 2.

The Equal Protection Clause under the United States Constitution essentially directs that all persons similarly situated shall be treated in the same manner. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct.

2382, 72 L.Ed.2d 786 (1982). It also prohibits intentional, discriminatory enforcement of nondiscriminatory laws. *City of Minneapolis v. Buschette,* 307 Minn. 60, 240 N.W.2d 500, 502 (1976) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).

 Under the Minnesota Constitution, if a statute does not involve a suspect classification or a fundamental right, then constitutional challenges are considered under a rational-basis standard. *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986). Minnesota courts apply a more stringent equal-protection test than is used by their federal counterparts. *State v. Frazier,* 631 N.W.2d 432, 435 (Minn.App.2001).

 Plaintiffs argue that, with over 100 other homes utilizing more than one kitchen in a single-family dwelling, the City is denying them equal protection by singling out homes with adult-foster-care residents. They contend that the City wrongfully decided that the presence of two kitchens demonstrates that they have two dwellings in violation of the neighborhood's zoning, where there is evidence that other homes have similar situations without being similarly encumbered by City enforcement. Plaintiffs further allege that the City is using the zoning ordinances as a pretext for discrimination based on the "not in my backyard" complaints from the Plaintiffs' neighbors. The thrust of Plaintiff's argument is that the City is applying and administering an otherwise facially neutral law "with an evil eye and an unequal hand." *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)

Defendant counters that Plaintiffs' equal-protection claims may be disposed of by the Supreme Court decision, *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In *Cleburne,* a group home for the mentally retarded challenged the validity of a zoning ordinance that, on its face, required a special-use permit for a "hospital for the feebleminded." *Id.* at 436, 105 S.Ct. 3249. Defendant argues that, under *Cleburne,* the proper means of challenging the implementation of the ordinance is through the administrative process and variance procedures, not through an equal protection challenge in federal court. But Defendant fails to note that the case was, itself, a federal court challenge of an ordinance that the Supreme Court ultimately held was invalid on equal protection grounds. *See id.* at 450, 105 S.Ct. 3249. In fact, the *Cleburne* Court ultimately held that the statute was invalid and rested "on an irrational prejudice against the mentally retarded." *Id.* at 450, 105 S.Ct. 3249.

This Court finds that genuine issues of material fact remain as to whether the City violated the equal protection clauses of the United States and Minnesota Constitutions. Plaintiffs have shown that the City imposed an enforcement action against it, while other evidence demonstrates that over 100 other homes contain two kitchens without any enforcement action against their owners. Further, Defendant has admitted that the ordinances do not provide that adding a kitchen to a single-family dwelling converts the property into a duplex or multi-family residential dwelling. Because Plaintiffs have provided sufficient evidence for a rational jury to determine that the City denied it equal protection by applying a facially neutral law in an inequitable manner, summary judgment is improper.

## F. Retaliation Under FHAA

Plaintiffs also make a claim of retaliation under the FHAA, 42 U.S.C. § 3617 (2000). That statute reads as follows:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in

the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

*Id.*

The parties' arguments with regard to the retaliation claim are limited, at best—consisting of one sentence from Defendant and two footnoted sentences from Plaintiff. Defendant argues that for the same reasons that Plaintiff's other FHAA claims must fail, its retaliation claim should similarly fail. Plaintiffs contend that because Defendant makes no argument with regard to that claim "other than its mistaken belief that it is entitled to summary judgment on Plaintiffs' other claims," summary judgment as to the retaliation claim should be denied.

Because the Court concludes that summary judgment is inappropriate for the Plaintiffs' other FHAA claims, summary judgment is similarly inappropriate for Plaintiff's claim of retaliation under the FHAA.

### G. Declaratory Judgment

The parties' arguments regarding Plaintiffs' claim for declaratory judgment are similarly brief. Plaintiffs seek declaratory relief under the following statutes: 28 U.S.C. § 2201(a), MINN. STAT. §§ 555.01 et seq., and MINN. STAT. § 462.361 (Compl.¶¶ 72–73). A successful action for declaratory judgment requires a viable underlying cause of action. *See Collin County v. Homeowners Ass'n for Values Essential to Neighborhood,* 915 F.2d 167, 170–71 (5th Cir.1990) (party seeking declaratory relief must have an underlying cause of action); *accord Brown v. Minnesota,* 617 N.W.2d 421, 425 (Minn.Ct.App.2000).

Because the Court has held that summary judgment is inappropriate for Plain-

tiffs' other claims, Defendant's motion for summary judgment regarding the declaratory judgment claim is similarly denied.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

The City of Saint Paul's Motion for Summary Judgment [Docket No. 10] is **GRANTED IN PART** and **DENIED IN PART**.

a) The City of Saint Paul's Motion for Summary Judgment with regard to Plaintiffs Judith Essling and Bridget Essling, as individuals, lacking standing is **GRANTED**. Plaintiffs Judith Essling and Bridget Essling shall be dismissed as parties. Plaintiff Essling's Homes Plus, Inc., has standing and shall remain a party to this action.

b) The remainder of the City of Saint Paul's Motion for Summary Judgment is **DENIED**.