[No. E048585. Fourth Dist., Div. Two. May 21, 2010.]

STEPHEN HARRIS et al., Plaintiffs and Appellants, v.
WACHOVIA MORTGAGE, FSB, Defendant and Respondent.

## COUNSEL

Stephen Harris and Ozelia Harris, in pro. per., for Plaintiffs and Appellants.

Anglin, Flewelling, Rasmussen, Campbell & Trytten, Robin C. Campbell, Mark T. Flewelling and Lynette Gridiron Winston for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—Plaintiffs Stephen and Ozelia Harris appeal a judgment entered after the trial court sustained without leave to amend a demurrer to their first amended complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices. The trial court held that all three causes of action are preempted by the federal Home Owners' Loan Act, or HOLA. (12 U.S.C. § 1461 et seq.) The court also held that the third cause of action, for unfair business practices, was impermissibly added to the first amended complaint without leave of court.

We conclude that the demurrer was properly sustained as to the claims for breach of the covenant of good faith and fair dealing and unfair business practices. However, plaintiffs' claim for breach of contract is not preempted by HOLA, and the judgment must be reversed as to that cause of action.

### FACTUAL HISTORY

"Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded [factual] allegations in plaintiffs' first amended complaint." (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394].)

In their first amended complaint, plaintiffs alleged that they entered into an agreement for home loan services with World Savings, Inc. Wachovia Mortgage, FSB (Wachovia), is the successor in interest to World Savings, Inc. Plaintiffs had two home loans through Wachovia, secured by a first and second deed of trust on their property in Fontana. During the pendency of the loans, Wachovia failed to apply payments made by plaintiffs to plaintiffs' accounts, causing plaintiffs' accounts to go into default. Wachovia falsely claimed that it did not receive plaintiffs' payments and concealed the fact that it had received the payments and had credited them to its own account rather than to plaintiffs' accounts.

On June 15, 2007, plaintiffs filed a complaint in the Superior Court of San Bernardino County for conversion and other causes of action. On February

26, 2008, plaintiffs and Wachovia entered into a written settlement agreement. In that agreement, Wachovia agreed to credit plaintiffs' first loan account with the disputed amount and to modify the loan agreement from bearing an adjustable interest rate to a fixed interest rate.[1]

Plaintiffs agreed to dismiss their complaint upon execution of the settlement agreement and did so. However, Wachovia failed to bring plaintiffs' loan account current and failed to modify the loan as agreed. Plaintiffs further alleged that Wachovia acted in bad faith in failing to comply with the terms of the settlement agreement and falsely represented that it would do so, with the intent to deceive plaintiffs and induce them to dismiss their prior action.

## LEGAL ANALYSIS

### STANDARD OF REVIEW

In an appeal from a judgment based on an order sustaining a demurrer for failure to state a cause of action, the reviewing court treats the demurrer as admitting all material facts properly pleaded and, giving the complaint a reasonable interpretation, independently determines whether the complaint states a cause of action under any legal theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].) Because a demurrer raises only questions of law, " 'an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal [citation], and an appellate court can affirm or reverse the ruling on new grounds. [Citations.] After all, we review the validity of the ruling and not the reasons given. [Citation.]' " (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1396–1397 [89 Cal.Rptr.3d 659].)

### THE DEMURRER WAS PROPERLY SUSTAINED WITHOUT LEAVE TO AMEND AS TO THE SECOND AND THIRD CAUSES OF ACTION WITHOUT REGARD TO PREEMPTION

In their briefing, plaintiffs assert only that their first amended complaint is not preempted under HOLA. They do not address the trial court's alternative basis for sustaining the demurrer as to the third cause of action, for unfair business practices, i.e., that the cause of action was added without leave of

---

[1] The first amended complaint alleges that Wachovia agreed to bring both loan accounts current and to modify both loans. The settlement agreement, however, provides only for applying the disputed payments to the first loan and modifying the first loan. It requires no action by Wachovia as to the second loan.

court and exceeded the scope of the court's order granting leave to amend the original complaint, which did not contain a cause of action for unfair business practices.

■ Regardless of whether the claim would be preempted under HOLA, the demurrer was properly sustained on that ground. Following an order sustaining a demurrer or a motion for judgment on the pleadings with leave to amend, the plaintiff may amend his or her complaint only as authorized by the court's order. (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785 [57 Cal.Rptr. 227] [leave to amend complaint does not constitute leave to amend to add new defendant].) The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend. (See *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015 [84 Cal.Rptr.3d 642] [acknowledging rule but finding it inapplicable where new cause of action "directly responds" to trial court's reason for sustaining the demurrer].) Here, the new cause of action is not within the scope of the order granting leave to amend.

■ The demurrer was also properly sustained as to the second cause of action, for breach of the covenant of good faith and fair dealing, without regard to preemption. In *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85 [44 Cal.Rptr.2d 420, 900 P.2d 669], the California Supreme Court held that the tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts. It established a "general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of 'an independent duty arising from principles of tort law' [citation] other than the bad faith denial of the existence of, or liability under, the breached contract." (*Id.* at p. 102.) Here, the contract is not an insurance contract, and plaintiffs have not pleaded a violation of any duty arising under tort law. Rather, they have merely pleaded that Wachovia acted in bad faith in breaching the settlement agreement. Consequently, they have not stated a cause of action for breach of the covenant of good faith and fair dealing.[2]

## HOLA DOES NOT PREEMPT PLAINTIFFS' BREACH OF CONTRACT CLAIM

The trial court sustained the demurrer without leave to amend because it determined that all causes of action are preempted by HOLA. We review this

---

[2] Because neither party addressed this ground for sustaining the demurrer, we issued an order inviting them to submit supplemental briefing. (Gov. Code, § 68081.) Neither party responded to our invitation.

ruling independently, as a matter of law. (*Gibson v. World Savings & Loan Assn.* (2002) 103 Cal.App.4th 1291, 1297 [128 Cal.Rptr.2d 19] [Fourth App. Dist., Div. Two].)

■ The doctrine of federal preemption is based on article VI, clause 2 of the federal Constitution, which directs that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) "Whether federal law preempts state law is fundamentally a question whether Congress has intended such a result." (*Peatros v. Bank of America* (2000) 22 Cal.4th 147, 157 [91 Cal.Rptr.2d 659, 990 P.2d 539].) Congressional intent to preempt may be either express or implied, i.e., either " 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 152–153 [73 L.Ed.2d 664, 102 S.Ct. 3014].) Preemption may result, not only from action taken by Congress itself, but also from action by a federal agency. (*Louisiana Public Service Comm'n v. FCC* (1986) 476 U.S. 355, 369 [90 L.Ed.2d 369, 106 S.Ct. 1890].) A regulation's preemptive effect "does not depend on express congressional authorization to displace state law." (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta, supra,* 458 U.S. at p. 154.) Instead, the determinative issues are whether (1) the agency intended its regulation to have a preemptive effect and (2) the agency acted within the scope of its congressionally delegated authority by issuing the preemptive regulation. (*Ibid.*) So long as those conditions are met, "[f]ederal regulations have no less pre-emptive effect than federal statutes." (*Id.* at p. 153.)

■ Federally chartered savings associations, such as Wachovia, are regulated by HOLA. (12 U.S.C. §§ 1462, 1463.) HOLA creates the Office of Thrift Supervision (OTS) (12 U.S.C. § 1462a(a)) and authorizes its director to issue regulations prescribing the operation of federal savings associations according to the "best practices of thrift institutions in the United States." (12 U.S.C. § 1464(a).) In 1996, the OTS issued 12 Code of Federal Regulations part 560.2 (hereafter part 560.2 or § 560.2) to address preemption specifically in the context of lending operations. (61 Fed.Reg. 50951, 50952 (Sept. 30, 1996).) Part 560.2 states that the "OTS hereby occupies the entire field of lending regulation for federal savings associations," thereby permitting federal savings associations to extend credit "without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . ." (§ 560.2(a) (2010).)[3]

---

[3] Part 560.2 (2010) provides as follows:

"(a) Occupation of field. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and

Accordingly, it cannot be questioned that where part 560.2 applies, it preempts any state law which purports to regulate the lending activities of federal savings associations. (*Silvas v. E\*TRADE Mortgage Corp.* (9th Cir. 2008) 514 F.3d 1001, 1004–1005.)

It is well established, however, that part 560.2 does not apply to contractual obligations voluntarily undertaken by a federal savings association. Such obligations are not imposed by state law. (*Gibson v. World Savings & Loan Assn., supra,* 103 Cal.App.4th at p. 1302, citing *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 526 [120 L.Ed.2d 407, 112 S.Ct. 2608].) Moreover, part 560.2 both expressly applies only to state law, defined as " 'any state statutory regulation, ruling[,] order or judicial decision' " (*Wells v. Chevy Chase Bank, F.S.B.* (2003) 377 Md. 197 [832 A.2d 812, 824] (*Wells*), quoting § 560.2(a) (2003)), and expressly exempts from preemption state " 'contract and commercial law . . . that . . . only incidentally affects the lending operations of Federal savings associations or [is] otherwise consistent with' the purpose of the regulations" (*Wells,* 832 A.2d at p. 823, quoting § 560.2(c) (2003)). "That intention was confirmed in 61 Fed.Reg. at 50966: 'OTS wants to make clear that it does not intend to preempt basic state laws such as state

sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or Sec. 560.110 of this part. For purposes of this section, 'state law' includes any state statute, regulation, ruling, order or judicial decision.

"(b) Illustrative examples. Except as provided in Sec. 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

"(1) Licensing, registration, filings, or reports by creditors;

"(2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements;

"(3) Loan-to-value ratios;

"(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

"(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

"(6) Escrow accounts, impound accounts, and similar accounts;

"(7) Security property, including leaseholds;

"(8) Access to and use of credit reports;

uniform commercial codes and state laws governing real property, contracts [or] torts . . . .' [Citations.]" (*Wells*, at p. 823; see also extensive discussion in *Wells*, at pp. 823–827.)

Wachovia contends that the claim is preempted because it is based on the allegation that it misapplied plaintiffs' payments. It contends that this falls within the categories of lending activities, including processing and servicing of a mortgage, as to which HOLA preempts state law. (§ 560.2(b)(10) (2010).) However, plaintiffs' claim is not that state law required Wachovia to apply their payments in any particular way; rather, their claim is that Wachovia failed to credit their payments to their account at all. This is a matter of ordinary contract law and has no effect on Wachovia's lending activities. Moreover, Wachovia ignores the fact that plaintiffs' claim is based on the settlement agreement in which Wachovia specifically agreed to credit plaintiffs' account with the disputed payments. It takes a fair amount of chutzpah to contend that a federally chartered lender can enter into a settlement agreement which effectively acknowledges that it has received a borrower's payments and has failed to credit them to his account and then invoke HOLA to avoid the obligation to comply with the agreement.

 The settlement agreement is not preempted by HOLA or by part 560.2. Accordingly, the demurrer was improperly sustained as to the first cause of action.

---

"(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

"(10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;

"(11) Disbursements and repayments;

"(12) Usury and interest rate ceilings to the extent provided in 12 U.S.C. 1735f-7a and part 590 of this chapter and 12 U.S.C. 1463(g) and Sec. 560.110 of this part; and

"(13) Due-on-sale clauses to the extent provided in 12 U.S.C. 1701j-3 and part 591 of this chapter.

"(c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

"(1) Contract and commercial law;

"(2) Real property law;

"(3) Homestead laws specified in 12 U.S.C. 1462a(f);

"(4) Tort law;

"(5) Criminal law; and

"(6) Any other law that OTS, upon review, finds:

"(i) Furthers a vital state interest; and

"(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section."

## THE AWARD OF COSTS, INCLUDING ATTORNEY FEES, IS REVERSED AS A MATTER OF LAW

■ Plaintiffs state in their opening brief that following entry of judgment, the trial court awarded Wachovia $19,726 in attorney fees and costs.[4] Plaintiffs ask us to direct the trial court to reverse the award of costs and attorney fees. They do not cite any legal authority in support of their request. None is needed, however, because the award of costs necessarily falls with the judgment. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [114 Cal.Rptr.2d 898]; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 [55 Cal.Rptr.3d 158].) Attorney fees authorized by statute or by contract are included in an award of costs. (Code Civ. Proc., § 1033.5, subd. (a)(10)(A), (B); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 [71 Cal.Rptr.2d 830, 951 P.2d 399].) Consequently, the cost award, including attorney fees, is reversed along with the judgment.

Plaintiffs do not address the question whether the court had the authority to award attorney fees. Accordingly, that issue is not before us. However, we note that Wachovia's motion for attorney fees was based on the premise that the underlying promissory note and deed of trust provided for an award of attorney fees to the prevailing party in any suit on those documents. The parties settled all claims based on the promissory note and the deed of trust in the prior lawsuit, however, as recited in the settlement agreement. The current suit is for breach of the settlement agreement. Any award of attorney fees and costs in this action must emanate from the settlement agreement and not from the contracts which were at issue in the prior suit. (Civ. Code, § 1717, subd. (a).) The settlement agreement does not appear to provide for an award of attorney fees in the event that either party takes action to enforce it. Consequently, if the issue of an award of attorney fees should again come before the trial court, the court may wish to consider whether such an award is authorized by the settlement agreement.

## DISPOSITION

The judgment is affirmed as to the second and third causes of action in plaintiffs' first amended complaint; it is reversed as to the first cause of action, for breach of contract, and remanded for further proceedings. The award of costs, including attorney fees awarded by order of the trial court filed November 9, 2009, is also reversed.

---

[4] The judgment includes an award of costs, leaving the amount to be determined. The order fixing the amount of attorney fees is not included in the record on appeal. We take judicial notice that on November 9, 2009, the trial court awarded Wachovia $19,726 in attorney fees. (Evid. Code, §§ 452, subd. (d), 459.)

Plaintiffs are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

Hollenhorst, Acting P. J., and Richli, J., concurred.