Filed 1/11/23  Kane v. Hiekali CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DAWN KANE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NASSER HIEKALI et al.,<br><br>    Defendants and Respondents. | B314033<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV17207) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia D. Nieto and Kristin S. Escalante, Judges.  Affirmed.

Dawn Kane, in propria persona, for Plaintiff and Appellant.

R.J. Ryan Law, Richard J. Ryan and Aaron J. Weissman for Defendants and Respondents.

Dawn Kane (appellant) appeals from a judgment entered after the trial court sustained demurrers filed by Nasser Hiekali, United Medical Imaging, Inc. (UMI), United Medical Imaging Healthcare, Inc. (UMIH), and United Medical Imaging Management, Inc. (UMIM) (collectively respondents), and dismissed appellant's claims against respondents on the ground that they were barred under the applicable statute of limitations. We affirm.

## BACKGROUND

**Appellant's complaint**

Appellant filed her complaint for general negligence, personal injury, and damages against Hiekali doing business as UMI and Does 1-10 on May 17, 2019. Appellant alleged that on Thursday, May 18, 2017, she went for a magnetic resonance imaging scan (MRI) pursuant to her doctor's orders at UMI in Los Angeles. Upon arriving at 8:15 p.m. for her 8:30 p.m. appointment, she was surprised to find the waiting room busy. Appellant was the last person to be seen and was called in for her MRI at approximately 9:30 p.m. The technician let appellant know that the MRI was going to be long and could last over an hour. The technician also told appellant that he would communicate with her through a speaker inside of the machine. Once she was in the machine, appellant fell asleep.

When she awoke appellant felt it was unusually quiet. She asked the technician if she was done and received no answer. Appellant became fearful and started yelling louder and louder. She was soon in a "full state of panic." She still heard nothing from the technician. Appellant started yelling as loudly as she could, moving her body and banging herself against the machine.

When she finally came out she was shaking, crying, and hysterical. Appellant experienced neck and arm pain after the experience. A friend went to appellant's home on May 21, 2017, and convinced appellant to make a formal complaint to LA CARE. The following week appellant saw her doctor again and insisted that she had new pain that she believed resulted from UMI's negligence.

Appellant's complaint alleged that UMI was negligent in failing to have its technician service her in a customary and normal manner and failing to have a doctor on duty supervising the technician.

**First demurrer and motion to strike**

On September 26, 2019, Hiekali and UMI filed a demurrer pursuant to Code of Civil Procedure section 430.10 and motion to strike pursuant to Code of Civil Procedure section 435. Hiekali and UMI asserted that appellant's complaint failed to state facts sufficient to constitute a cause of action against them and sought to strike portions of the complaint. The demurrer failed to raise the issue of the statute of limitations applicable to claims of medical negligence.

Appellant submitted no opposition to either the demurrer or motion to strike. On February 7, 2020, the court found that the complaint stated a cause of action against Hiekali and UMI for general negligence. However, it found that appellant stated insufficient facts to state a prima facie claim for punitive damages. Accordingly, the punitive damages claim was stricken. The demurrer was overruled, and the motion to strike was granted with 20 days leave to amend.

3

**First amended complaint**

On January 14, 2020, appellant substituted UMI as Doe No. 1 and UMIH as Doe No. 2. On February 20, 2020, appellant substituted UMIM as Doe No. 3.

On February 27, 2020, appellant filed her first amended complaint (FAC) against respondents. Appellant listed causes of action for (1) knowledge of probable dangerous consequences by willful conduct and marketing fraud; (2) willful deviation of the normal standard of care; (3) authorized and ratified employees' wrongful conduct; and (4) history of fraudulent, "malicient [*sic*]" and oppressive acts. Appellant alleged the same underlying facts set forth in her original complaint. Appellant sought punitive damages pursuant to Civil Code section 3294.

In support of her first cause of action, appellant added facts including that respondents' marketing materials claim that they provide "'Quality Care, Quality Service, Quality Reports' and 'puts their patients at the center of everything they do.'" Appellant claimed that respondents willfully run their business in a way that puts patients at risk. Appellant also alleged that it appeared that the employee that performed her MRI was overworked and not adequately trained. In support of her second cause of action, appellant added facts including a failure to purchase accessories to ensure appellant's safety in the MRI machine. In support of her third cause of action, appellant added facts suggesting that an employee of respondents tampered with data in order to undermine appellant's assertion that she was left in the MRI machine. All allegations surrounded appellant's initial claims of negligence stemming from her experience during the MRI procedure.

**Demurrer to the FAC**

After substituting new counsel on March 16, 2020, respondents filed a demurrer to the FAC on March 27, 2020. In their demurrer to the FAC, respondents first raised the point that appellant's claims were barred by the applicable statute of limitations. Specifically, respondents argued that appellant's FAC revolves around a simple allegation that appellant sustained physical and emotional injuries while an MRI technician was performing scans pursuant to a physician referral. Because the alleged May 18, 2017 incident took place during the course of a medical procedure, respondents argued, it implicated the one-year statute of limitations for medical procedures found in Code of Civil Procedure section 340.5 (section 340.5). Because appellant's claim against respondents was not filed until May 17, 2019, two years after the incident, appellant's claims were barred.

In her opposition to respondents' demurrer, appellant "agree[d] with [respondents] that this case is a medical negligence case but disagree[d] that it [was] time-barred." (Boldface and italics omitted.) Among other things, appellant argued that she was still discovering harm and that the statute is tolled when fraud is proven.

On October 14, 2020, the trial court sustained respondents' demurrer. The court found that the medical malpractice statute of limitations applied to all of appellant's causes of action, which revolved around the alleged May 18, 2017 incident involving a medical procedure. Based on the pled facts, appellant knew of the injury and its negligent cause on May 18, 2017. In fact, she reported the incident on May 21, 2017. Thus, under section 340.5, she had one year to bring her malpractice-based claims.

The court disagreed that the fraud exception would serve to toll the statute of limitations in this case.

As to appellant's fraud-based causes of action, the trial court determined that to the extent that they were not barred by the statute of limitations, they failed to state a claim as they were not pled with the requisite specificity. The court noted, "[t]he examples of marketing, such as 'quality care' and other ambiguous statements of opinion that amount to mere puffery, also cannot form the basis of a claim." Appellant failed to allege any reliance on such statements.

The trial court granted appellant 20 days leave to amend her complaint.

**Second amended complaint**

On November 2, 2020, appellant filed her second amended complaint (SAC). Appellant listed causes of action for negligence, negligent hiring and supervision, premises liability, and violation of Business and Professions Code section 17200. In spite of changing the captions of her causes of action, appellant alleged the exact same facts that she had alleged in her original complaint regarding the events of May 18, 2017.

In her first cause of action, appellant alleged that respondents breached their duty of care to carefully and diligently manage and operate the health care centers and failed to implement proper safeguards that led to appellant's damages. In her second cause of action, appellant alleged that respondents undertook the responsibility for staffing the centers but failed to hire adequately licensed, experienced and trained technicians. In addition, appellant alleged that respondents worked their technicians late into the night without sufficient time off and overscheduled patients. Appellant alleged that respondents'

breach of duty led to her damages after being trapped in an MRI machine for an unacceptable period of time. The third cause of action asserted that respondents breached their duty of care to take reasonable measures to ensure that appellant would not be exposed to unreasonable risk of harm. In her fourth cause of action for violation of Business and Professions Code section 17200, appellant claimed that respondents engaged in unlawful, unfair and fraudulent business practices by failing to carefully and diligently manage their health care facilities, improperly hiring and training technicians, and establishing inadequate staffing protocols.

**Demurrer to the SAC**

On November 13, 2020, respondents filed and served their demurrer to appellant's SAC, arguing that it was barred in its entirety under section 340.5. Respondents noted that despite the fact that appellant had agreed that her claim was for medical negligence, that cause of action was conspicuously absent from her complaint. Respondents argued that underlying the entirety of the SAC was a time-barred claim for medical negligence and that, regardless of the captions, all her causes of action were barred. Respondents cited supporting case law confirming that creative pleading cannot transform a claim of medical negligence into ordinary negligence. Respondents cited *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1000 (*Flowers*) for the proposition that the same alleged breach of duty cannot give rise to distinct causes of action for ordinary as well as professional negligence.

On April 26, 2021, the trial court sustained respondents' demurrer without leave to amend as to Hiekali, UMI and UMIH. The court found that "each claim is directly related to the

7

provision of medical services, to wit, the MRI scan. . . . The medical malpractice statute of limitations applies to all of the causes of action based on the negligent MRI scans." The trial court's dismissal of the SAC with prejudice as to Hiekali, UMI and UMIH was entered on May 21, 2021.

The trial court continued the demurrer as to UMIM until June 28, 2021, because at the time of the hearing UMIM's corporate status was suspended.

**Further proceedings regarding UMIM**

On June 28, 2021, UMIM's corporate status had not yet been resolved. Thus, UMIM still had no standing to defend the lawsuit. The court scheduled an order to show cause re: UMIM's corporate status for August 27, 2021.

On July 9, 2021, UMIM submitted documentation that the corporation was dissolved. As such, it was authorized to wind up its affairs. The trial court instructed UMIM to file and serve a motion to have the fully briefed demurrer ruled upon in favor of UMIM. On November 4, 2021, the trial court granted UMIM's motion for order sustaining fully briefed demurrer without leave to amend and to enter order of dismissal based thereupon. The court stated, "The court sustains the demurrer of UMIM for the reasons stated in [the court's] [m]inute [o]rder dated April 26, 2021. The second amended complaint is dismissed as against UMIM." The court noted that the same outcome would have resulted even if UMIM had not revived its corporate status. The court cited *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1153-1154, for the proposition that where a complaint fails to state a cause of action, it is error for the court to enter a default judgment against any defendant.

The order dismissing appellant's SAC with prejudice was entered and served on all parties on November 4, 2021.

**Notices of appeal and consolidation**

On July 7, 2021, appellant timely appealed from the dismissal with prejudice of Hiekali, UMI and UMIH entered on May 21, 2021. The appeal was given case No. B314033.

On December 29, 2021, appellant timely appealed from the court's order of dismissal as to UMIM on November 4, 2021. The appeal was given case No. B317917.

On February 16, 2022, this court ordered the appeals consolidated.

## DISCUSSION

### I. Standards of review

A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 (*Hernandez*).) First we review the complaint de novo to determine whether it contains sufficient facts to state a cause of action. (*Ibid.*) "In doing so, we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed." (*Ibid.*) Reversal is warranted if facts were alleged showing that the plaintiff is entitled to relief under any possible legal theory. (*Ibid.*)

Where the complaint is sustained without leave to amend, we must determine whether the trial court abused its discretion in declining to grant leave to amend. (*Hernandez, supra*, 49 Cal.App.4th at p. 1497.) "[W]e will only reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment." (*Id.* at p. 1498.) "The

9

burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

A party may not avoid defects in its original complaint by omitting facts that rendered the prior complaint defective or adding facts that are inconsistent with prior allegations. "'Under the sham-pleading doctrine, admissions in an original complaint that has been superseded by an amended pleading remain within the court's cognizance and the alteration of such statements by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted.'" (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1061.)

## II.    Section 340.5 and applicable law

Section 340.5 provides that "[i]n an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."

The term "health care provider" is defined as "any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code . . . or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." (§ 340.5, subd. (1).) The term "health care provider" also "includes the legal representatives of a health care provider." (*Ibid*.)

10

The term "professional negligence" is defined as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed." (§ 340.5, subd. (2).)

To determine whether a statute of limitations applies to bar a cause of action, "it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22.) "'[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations . . . .'" (*Id.* at p. 23.) Where the gravamen of the complaint asserts professional malpractice, the applicable malpractice statute of limitations applies to the entire complaint "notwithstanding the existence of other claims against the professionals, such as misrepresentation, for which a different statute of limitations might otherwise apply." (*Sahadi v. Scheaffer* (2007) 155 Cal.App.4th 704, 715; see *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1159 [holding that "the allegations of professional negligence subsume all of the allegations for breach of fiduciary duty" for the purposes of determining the statute of limitations].)

## III. Section 340.5 applies to bar all four causes of action in the SAC

Applying the standards set forth above, we find that the trial court properly sustained respondents' demurrer to appellant's SAC on the ground that appellant's claims are barred by the statute of limitations found in section 340.5. In spite of

the titles of appellant's causes of action, the gravamen of each cause of action is medical negligence, therefore the causes of action are barred under section 340.5.

### A. *First cause of action for negligence*

Although appellant has framed her first cause of action as one for general negligence, her allegations concern medical negligence. Appellant admits that respondents "were in the business of managing and operating the United Medical Imaging Healthcare centers which provided medical diagnostic services to patients/clients." In this role, respondents "breached their duty of care . . . by failing to carefully and diligently manage and operate the healthcare centers . . . which resulted in [appellant's] damages."

The SAC does not allege that respondent health care facilities are not
"licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." (§ 340.5, subd. (1).) In fact, it admits they were facilities that "provided medical diagnostic services to patients/clients." Thus, any claim arising out of respondents' act of providing health care services to appellant was subject to section 340.5.[1]

The term "health care provider" also "includes the legal representatives of a health care provider." (§ 340.5, subd. (1).)

_____

[1] As will be discussed further in part IV of this opinion, appellant appears to put forward a new claim that the corporate respondents were not properly licensed as health care providers because various directors were not licensed physicians. Any such claim is properly brought before the applicable licensing board and does not change the fundamental nature of appellant's claims in this lawsuit.

12

Appellant does not dispute that Hiekali falls into this category. Thus, in the context of this lawsuit, section 340.5 applies to bar appellant's claims against him as well.[2]

Because the cause of action for negligence involves negligence that occurred during the rendering of health care services, section 340.5 applies, and appellant's first cause of action is barred. (*Canister v. Emergency Ambulance Serivce, Inc.* (2008) 160 Cal.App.4th 388, 404 (*Canister*) [noting that "the relevant test is . . . whether the negligence occurred in the rendering of services for which a provider is licensed"]; see *Flowers, supra*, 8 Cal.4th at p. 1000 [holding that "whether the cause of action is denominated 'ordinary' or 'professional' negligence, or both, ultimately only a single standard can obtain under any given set of facts"].)

## B. *Second cause of action for negligent hiring and supervision*

Appellant's second cause of action for negligent hiring and supervision also has at its core the incident of May 18, 2017. Appellant claims that respondents had a duty to hire licensed, experienced and adequately trained individuals, as well as implement protocols to avoid overscheduling and difficult hours for staff. Appellant alleges that respondents' breach of this duty led to the event during which she was trapped in an MRI machine for an unacceptable amount of time.

---

[2]  Appellant asserts that MRI technicians are not regulated in California. We note that appellant's position does not appear to be correct. (See Health & Safety Code, § 114870; Cal. Code Regs., tit. 17, § 30441.) However, we decline to address this point further, as appellant is not suing the MRI technician, but the health care facilities and their legal representative.

13

Because the cause of action for negligent hiring and supervision involves negligence that occurred during the rendering of health care services, section 340.5 applies, and appellant's second cause of action is barred. (*Canister, supra*, 160 Cal.App.4th at p. 404.)

**C.** ***Third cause of action for premises liability***

Appellant's third cause of action for premises liability is also a claim of medical negligence. In it, appellant alleges that respondents were under a duty of care to take reasonable measures that appellant would not be exposed to unreasonable risk of harm while on the premises of the facility where her MRI was performed. However, the only incident alleged at that facility was an incident of alleged medical negligence, in which appellant was allegedly harmed while undergoing an MRI procedure.

Because the cause of action for premises liability involves negligence that occurred during the rendering of health care services, section 340.5 applies and appellant's third cause of action is barred. (*Canister, supra*, 160 Cal.App.4th at p. 404.)

**D.** ***Fourth cause of action for violation of Business and Professions Code section 17200***

Preliminarily, we note that appellant has failed to show that she obtained permission to add this new cause of action in her SAC. "The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.)

The purpose of the unfair competition law (UCL) is to "safeguard the public against the creation or perpetuation of

monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." (Bus. & Prof. Code, § 17001.) "[A]n action under the UCL 'is not an all-purpose substitute for a tort or contract action.'" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150.)

In her fourth cause of action, appellant alleges that respondents engaged in unlawful, unfair and fraudulent business practices when they "failed to carefully and diligently manage and operate" their health care centers, "failed to implement proper safeguards and protocols," and "negligently and improperly hired and trained technicians," resulting in the incident that caused appellant's alleged damages. Despite the caption of the cause of action, the gravamen of the claim was that appellant was subjected to negligent medical care. Because the core of appellant's cause of action is desire for tort damages for professional negligence, it is barred by section 340.5. (*Canister, supra*, 160 Cal.App.4th at p. 404.)

The one-year statute of limitations found in section 340.5 applies to all four of appellant's causes of action in the SAC. Therefore, they are time-barred, and appellant failed to state a cause of action.

## IV. Appellant has failed to show error

In support of her position that the demurrer was erroneously sustained, appellant argues that respondents are not health care providers. Appellant argues that Hiekali is not a doctor, and the medical facilities were not licensed. We reject appellant's argument for several reasons.

15

Hiekali, as the legal representative of the health care facilities, may take advantage of the one-year statute of limitations found in section 340.5, subdivision (1). Appellant fails to cite case law suggesting that section 340.5 does not apply when the legal representative is not a doctor. It is appellant's burden to prove any reasonable possibility that her claims may survive if amended. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) In the absence of legal authority, we decline to find that section 340.5 does not apply to Hiekali under the circumstances.

Appellant's position that the facility-respondents are not licensed is conclusory and lacks support in the record. Appellant's argument is difficult to follow. She claims that the trial court allowed respondents to hold themselves out as health care providers, when in fact they are "Medical Service Organizations." Appellant's argument that respondents have somehow defrauded the licensing authorities is not properly before this court and does not change the nature of her claims. Further, appellant fails to provide legal authority explaining how any licensing irregularity affects the statute of limitations. Instead, she cites various YouTube videos and claims that the "co-mingling of MSO and HCP here is a clear indicator of the Corporate Practice of Medicine." Appellant fails to provide legal authority that the corporate structure of the respondent facilities places them outside of the limitations of section 340.5.[3]

---

[3] Appellant cites Business and Professions Code section 2400, which states that "[c]orporations and other artificial legal entities shall have no professional rights, privileges, or powers." However, appellant fails to provide any authority suggesting that this section affects the relevant statute of limitations.

"[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10.) "[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) As appellant has failed to provide legal authority or cogent legal argument, we decline to address this claim further.

Appellant cites *Marik v. Superior Court* (1987) 191 Cal.App.3d 1136 for the proposition that Hiekali was not qualified to be a director of UMIH. The argument is irrelevant to the question of whether appellant's complaint sufficiently stated a claim and does not alter the nature of appellant's complaint.[4] Because the gravamen of the complaint asserts professional malpractice, the applicable malpractice statute of limitations applies to the entire complaint "notwithstanding the existence of other claims against the professionals." (*Sahadi v. Scheaffer, supra*, 155 Cal.App.4th at p. 715.) Regardless of Hiekali's alleged lack of qualification, the foundation of appellant's complaint—medical negligence—remains the same.

Appellant argues that the court erred in dismissing UMIM, as in doing so the court "ignore[ed] Judge 3[']s previous ruling that all further proceedings should be stayed *pending a final determination on corporate status of UMIM, INC.* which had yet to be determined." Appellant argues that the court erroneously

---

[4] Equally irrelevant is appellant's reference to Hiekali's brother, who is not a party to this lawsuit.

allowed UMIM to defend itself prior to full dissolution of the corporation on June 10, 2022. Appellant argues that Hiekali perjured himself by declaring that UMIM had no liabilities.

These arguments are irrelevant. As the trial court noted, the same outcome would have resulted even if UMIM had not resolved its corporate status, because appellant failed to state a claim against it. (*Molen v. Friedman, supra*, 64 Cal.App.4th at pp. 1153-1154.) Appellant fails to cite any law challenging this legal authority.

Appellant bears the burden of showing reversible error on appeal. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) She has failed to do so.[5]

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

CHAVEZ, J.

We concur:

LUI, P. J.                    BENKE, J.*

---

[5] Appellant makes various arguments regarding respondents' motion to tax costs. We decline to address them, as appellant has not appealed from an order on a motion to tax costs. (Code Civ. Proc., § 904.1, subd. (a)(2); see *City of Los Angeles v. Aalbers* (1977) 67 Cal.App.3d 80, 82 ["An order determining costs is separately appealable as an order after judgment."].)

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.