Filed 1/21/25  Slotkin v. Ten Five Sixty Wilshire Condominium Assn. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ABIGAIL SLOTKIN, | B331657 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20SMCV01464) |
| v. | |
| TEN FIVE SIXTY WILSHIRE CONDOMINIUM ASSOCIATION ET AL., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge.  Affirmed in part, reversed in part.

Cole & Loeterman, Dana M. Cole, for Plaintiff and Appellant.

Wesierski & Zurek, Christopher P. Wesierski and Christian C.H. Counts, for Defendants and Respondents.

Plaintiff Abigail Slotkin brought this action against defendants Ten Five Sixty Wilshire Condominium Association (the Association) and Manny Diaz, a property manager employed by the Association, alleging they stopped providing her with bellman services at the condominium complex where she resides. The operative third amended complaint (TAC) asserted two causes of action: (1) breach of contract and (2) housing discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12955 et seq.). Slotkin appeals from judgment entered after the trial court sustained demurrers to both causes of action without leave to amend.

On appeal, Slotkin contends she adequately pleaded a claim for breach of implied contract to provide bellman services despite pleading breaches of express contract in the TAC and prior complaints. She also contends the TAC adequately pleaded a claim for disability discrimination.

We reject Slotkin's attempt to plead a new cause of action for breach of implied contract, but conclude she adequately alleged a claim for disability discrimination. We reverse the judgment, affirm the order sustaining the demurrer to the breach of contract claim, and reverse the order sustaining the demurrer to the disability discrimination claim.

## BACKGROUND

### A. The Original, First, and Second Amended Complaints

Slotkin owns and resides in a condominium located in a complex owned and operated by the Association and managed by Diaz. In October 2020, she filed a complaint alleging the Association and Diaz provided other tenants in the luxury

2

condominium complex with bellman services, which included assistance with carrying groceries, luggage, and other items to and from residential units. However, they revoked Slotkin's bellman services and declined her requests to reinstate them as a reasonable accommodation to her disabilities.

Defendants filed a demurrer to the original complaint, and in October 2021, Slotkin filed a first amended complaint (FAC). The FAC added a new cause of action for "breach of governing documents/enforcement of equitable servitudes" based on various covenants, conditions, and restrictions recorded in a 1999 declaration of covenants, conditions, and restrictions (the 1999 CC&Rs). The FAC attached a copy of the 1999 CC&Rs and quoted several of its provisions concerning nonexclusive rights of use and enjoyment.[1] Citing these provisions, the FAC alleged the Association breached Slotkin's right to "bellhop services that assist all HOA members."

---

[1] The FAC quoted sections 2.07, 4.05(h), and 7.03 of the 1999 CC&Rs.

Section 2.07 provides, inter alia: "Every Owner has a nonexclusive right of use, enjoyment, ingress, egress, and support in, to, and throughout the Common Area and any improvements or facilities on these areas."

Section 4.05(h), among several provisions governing the Association's duties, requires the Association to "supervise all officers, agents, committees and employees . . . and to see that their duties are properly performed."

Section 7.03 provides: "No noxious, illegal, or seriously offensive activities shall be conducted in or upon any unit, . . . nor shall anything be done thereon which may be or may become a serious annoyance or a nuisance to or which may in anyway [sic] interfere with the quiet enjoyment of each of the owners of his respective unit."

3

Following a joint stipulation for leave to amend, Slotkin filed a second amended complaint (SAC) in January 2022. The SAC updated the breach of governing documents claim with an amended version of CC&Rs (the 2015 CC&Rs). As before, the SAC alleged defendants breached provisions in the 2015 CC&Rs by withholding bellman services.[2]

In their demurrer to the SAC, defendants argued the 2015 CC&Rs provided no "requirement which compels or would compel the Association" to provide bellman services to Slotkin or any other resident. Slotkin's opposition conceded these services were "not stated explicitly in the governing CC&Rs" but argued her claim should proceed under the "broad, bootstrapping" clauses on nonexclusive rights of use.

---

[2] The SAC invoked sections 3.2, 5.6(a), and 7.4(b)(i)-(b)(ii) of the 2015 CC&Rs.

Section 3.2 provides "non-exclusive reciprocal easements of access to, use and enjoyment of, and ingress and egress through all" common areas.

Section 5.6(a) provides: "No Owner shall permit or suffer anything to be done or kept upon or in such Owner's Unit or the Common Area which will obstruct or interfere with the rights of the other Owners, . . . nor which shall in any way interfere with the quiet enjoyment by each Owner of such Owner's respective Condominium."

Section 7.4(b)(i)-(b)(ii) provides: "The Board shall maintain, . . . such services, furnishings, equipment, maintenance and repair it may determine are necessary in order to keep and at all times maintain the Common Area . . . in a first[-]class condition. [¶] Except as provided [otherwise], the Association shall maintain, repair, . . . operate, and manage all of the Common Area and all facilities . . . . Maintenance shall include, without limitation, painting, cleaning, repairing, and replacing of all Common Areas . . . ."

4

Noting the absence of "any provision" on which Slotkin could base her breach of governing documents claim, the court sustained defendants' demurrer to the SAC and granted Slotkin 60 days leave to amend. Its order prohibited Slotkin from amending "the complaint to add a new party or cause of action without having obtained permission to do so." (Citing *Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 (*Harris*) [plaintiff cannot amend complaint to add new claim "without having obtained permission . . . , unless [it] is within the scope of the order granting leave to amend"].)

**B.    The Operative Third Amended Complaint**

Slotkin filed the operative third amended complaint (TAC) on January 17, 2023. As before, the TAC alleged Slotkin was physically disabled[3] and owned a condominium unit subject to various CC&Rs. Amidst accusations against Slotkin of "vague and unspecified acts of 'harassment'" in October 2019, the Association terminated "'"bellman" type services . . . , including but not limited to, carrying products or groceries up to [her] Unit.'" Thereafter, Slotkin made informal and disability-related accommodation requests for bellman services, which the Association denied or ignored.

In her first cause of action for breach of contract, Slotkin alleged "the existence of a contract between the HOA and [Slotkin] to provide various services in exchange for her HOA dues." "Although not proscribed specifically in the CC&Rs,

---

[3]    The TAC alleged Slotkin was disabled due to symptoms arising from ongoing knee, back, and neck problems, a heart condition, high blood pressure with intermittent low heart rate, and stress-induced panic attacks.

5

Slotkin has lived in the Property for several years and observed these services being provided to other residents of the building." Slotkin did not "currently possess a document which details exactly what services the HOA is required to provide in exchange for her monthly dues. She has information and belief that such a document *does* exist, . . . in the form of an HOA employee manual, or HOA membership benefits package. The document may exist in another form as well, within the possession of the HOA." Advertising material for the property "specifically denotes 24-hour concierge and valet services." As a paying member of the Association, Slotkin was eligible for these services. The Association breached the contract by revoking Slotkin's bellman services.

The second cause of action alleged defendants discriminated against Slotkin by denying her request for bellman services. At various times, Slotkin informed defendants of her disabilities and described "why the 'bellman' services were so crucial as an accommodation . . . ." Defendants denied these services "because of Slotkin's disability."

## C.    The Demurrer, Ruling, and Judgment

Defendants filed a demurrer to both causes of action in the TAC. As before, defendants noted Slotkin's breach of contract claim failed to quote or attach any document contractually obligating the Association to provide Slotkin bellman services. Defendants also argued Slotkin failed to allege facts supporting a nexus between her requested accommodation and equal opportunity to enjoy the premises.

For the first time in her opposition, Slotkin argued she could plead breach of contract through "implied conduct" by

paying HOA dues in exchange for bellman services. In support, Slotkin cited allegations in the TAC discussing her payment of HOA dues and defendants providing bellman services to other residents in her condominium. Slotkin argued defendants breached "this implied contract" by revoking her bellman services. In addition, Slotkin argued the TAC adequately alleged a claim for disability discrimination by refusing or ignoring her requests to reinstate bellman services.

Following an unreported hearing on July 12, 2023, the court sustained defendants' demurrer to the TAC without leave to amend. The court found Slotkin failed to cure deficiencies identified in prior rulings. The court also rejected Slotkin's new theory of breach of implied contract, noting the TAC "clearly states [Slotkin] believes a document exists providing for such services; this is not a statement of an implied contract." No allegations were made on promissory intent to provide bellman services in exchange for HOA dues "in a manner that creates a contract." As to the second cause of action, the court found the TAC failed to provide any factual allegation that defendants discriminated against her because of her disability, or that revocation of bellman services denied Slotkin her use of property. The court entered judgment on August 3, 2023. Slotkin timely appealed.

## DISCUSSION

### A.    Standards of Review and Governing Law

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) On appeal, we review de novo whether the pleading alleges facts sufficient to

7

state a cause of action.  (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 220 (*Young*).)  In doing so, we consider "all material facts pleaded in the complaint and those arising by reasonable implication therefrom; [we] may not consider contentions, deductions or conclusions of fact or law."  (*Ibid.*)

"Following an order sustaining a demurrer . . . with leave to amend, the plaintiff may amend his or her complaint *only* as authorized by the court's order.  [Citation]  The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so. . . ."  (*Harris*, *supra*, 185 Cal.App.4th at p. 1023, italics added.)  Obtaining leave to amend after a demurrer is sustained "on one ground does not give the plaintiff a license to add any possible cause of action that might not be subject to dismissal on that ground.  Otherwise, there would be virtually no limitation on amendments following the sustaining of a demurrer."  (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 456 (*Zakk*) [affirming dismissal of new cause of action "added without leave of court"]; see also Code Civ. Proc., § 436, subd. (b) [court may strike portion of pleading not in conformity with court order].)

Factual allegations in an original complaint that have been superseded by an amended pleading "'remain within the court's cognizance . . . .'"  (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1061 (*Lockton*).)  If a pleader makes inconsistent allegations in a later pleading, the court is permitted "'to take judicial notice of the prior pleadings'" and require that the pleader explain the inconsistency.  (*Ibid*.)  If the plaintiff fails to do so, "'the court may disregard the inconsistent allegations'" as sham pleadings.  (*Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1390 (*Amid*).)  The

8

alteration of allegations "by amendment designed to conceal fundamental vulnerabilities in a plaintiff's case will not be accepted." (*Lockton,* 184 Cal.App.4th at p. 1061.)

Where, as here, a demurrer is sustained without leave to amend, the burden of proving a reasonable possibility any defect in the complaint can be cured by amendment rests squarely on the plaintiff. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) The assertion of an abstract right to amend, done without factual allegations to support the possibility of amendment, does not satisfy this burden. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44 (*Rakestraw*).)

## B.    Breach of Contract (First Cause of Action)

Slotkin contends the TAC adequately pleaded breach of implied contract between the parties. (Citing Civ. Code, § 1621 ["An implied contract is one, the existence and terms of which are manifested by conduct"].) We reject this argument for several reasons.

To the extent Slotkin attempts to add a new cause of action for breach of implied contract, her new claim violates the court's prior order limiting the scope of amendment. Slotkin's prior complaints alleged breaches of express contracts—the 1999 and 2015 CC&Rs—covering nonexclusive easements and rights of enjoyment. Those claims were deficient because they failed to identify a provision imposing on the Association a duty to provide bellman services. (See *Holcomb v. Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490, 501 [absent "the specific terms Holcomb claims the bank had breached, the complaint fails to adequately state a cause of action for breach of contract"].) The order

9

granting Slotkin leave to file the TAC prohibited Slotkin from adding new claims.  Consistent with this order, the TAC realleged breach of *written* contract, this time "in the form of an HOA employee manual, or HOA membership benefits package." In other words, Slotkin again attempted to allege breach of an *express* contract, though based upon different documents. (Accord, *Vulk v. State Farm Insurance Co.* (2021) 69 Cal.App.5th 243, 263 ["The operative complaint alleges breach of an express contract, *not* an implied contract"].)

Slotkin cannot now change her theory to breach of a different contract implied from the parties' conduct.  (*Zakk, supra,* 33 Cal.App.5th at p. 456; *Harris*, *supra*, 185 Cal.App.4th at p. 1023.)  Slotkin did not request, and the court did not grant, her permission to allege this theory, which conflicts with the written contract(s) identified in the TAC covering the same subject matter.  Implied or quasi-contract claims "cannot lie where there exists . . . a valid express contract covering the same subject matter."  (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 203; see also Civ. Code, § 1619 [a contract "is either express or implied"].)

The positions Slotkin has taken in this case resemble the pleading inconsistencies in *Amid*, *supra*, 212 Cal.App.3d 1383, on which defendants rely.[4]  There, a surgeon sued a hospital for breach of contract.  (*Id.* at p. 1386.)  The surgeon's initial and first amended complaints did not allege whether the parties' "contractual relationship" was based on a written, oral, or implied contract.  (*Id.* at p. 1388.)  In his second amended complaint, the surgeon alleged breach of a written contract

---

[4]  Slotkin does not address *Amid* in her appellate briefs.

"further modified by oral agreement." In response to defendants' demurrer, the surgeon argued his claim "was based upon an implied contract . . . and *not* based on any express contract, either written or oral." (*Id.* at p. 1389.) Because the plaintiff pursued unexplained theories and engaged in "contradictory change[s] of position," the reviewing court affirmed dismissal of the surgeon's claim under the sham pleading doctrine. (*Id.* at pp. 1390–1391.)

As in *Amid*, Slotkin does not explain the inconsistencies between her multiple complaints pleading breach of express contract and her newfound pursuit of breach of implied contract. Her new argument—that a written contract exists on the subject matter or that terms can be implied from defendants' conduct—is at most contradictory, and at the very least uncertain. (See Code Civ. Proc., § 430.10, subd. (g) [demurrer lies for action "founded upon a contract [where] it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct"].) The trial court appropriately rejected Slotkin's attempt to plead around her inability to identify an express contract in which defendants were to provide bellman services in exchange for HOA dues. (See *Lockton*, *supra*, 184 Cal.App.4th at p. 1061.)

Even if this court were to assume Slotkin was permitted to allege a breach of implied contract claim in the TAC, the cause of action remains insufficiently pleaded. "Like an express contract, an implied-in-fact contract requires an ascertained agreement of the parties." (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 636.) Slotkin has cited no allegation in the TAC, and we are aware of none, in which the parties mutually agreed to the payment of HOA dues in exchange for bellman services. (See *Larian v. Larian* (2004) 123 Cal.App.4th 751, 762

11

["'a party's conduct is not effective as a manifestation of his assent unless he knows or has reason to know that the other party may infer from it that he assents'"]; *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 460 [outward manifestations of assent must show agreement to "'the same thing in the same sense'"].)

Slotkin has not explained how she could amend the complaint to cure any deficiency identified above. She did not argue for leave to file a fourth amended complaint in her opening brief, and vaguely asserted in reply that she can "explicitly plead breach of an implied contract as an alternative to a breach of written contract cause of action." This is insufficient to meet her burden. (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [plaintiffs must show in what manner they can amend the complaint "and how that amendment will change the legal effect" of their pleading]; *Rakestraw*, *supra*, 81 Cal.App.4th at p. 44 ["[a]llegations must be factual and specific, not vague or conclusionary"].) We thus discern no error in sustaining the demurrer to the first cause of action for breach of contract without leave to amend.

C.      **Disability Discrimination (Second Cause of Action)**

Slotkin contends the TAC adequately pleaded a cause of action for disability discrimination. We agree.

Government Code section 12955 makes a variety of discriminatory housing practices unlawful. Subdivision (a) of that statute, on which Slotkin's discrimination claim is based, makes it unlawful for the owner of any housing accommodation "to discriminate against or harass any person" because of various criteria, including disability. "FEHA in the housing area is [ ]

12

intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination." (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 780; see Gov. Code, § 12955.6.) Consistent with this intent, state courts "often look to cases construing" federal law governing housing discrimination—the Federal Housing Act (FHA), the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990 (ADA)—when interpreting FEHA. (*Auburn Woods I Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1592 (*Auburn Woods*).)

Unlawful housing discrimination includes the "provision of inferior terms, conditions, privileges, facilities, or services in connection with [ ] housing accommodations; . . . and includes refusal to make reasonable accommodations in rules, policies, practices, or services when these accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." (Gov. Code, § 12927, subd. (c)(1); accord, 42 U.S.C. § 3604, subds. (f)(2)(A), (f)(3)(B).)

"In order to establish discrimination based on a refusal to provide reasonable accommodations, a party must establish that he or she (1) suffers from a disability as defined in FEHA, (2) the discriminating party knew of, or should have known of, the disability, (3) accommodation is necessary to afford an equal opportunity to use and enjoy the dwelling, and (4) the discriminating party refused to make this accommodation." (*Auburn Woods*, *supra*, 121 Cal.App.4th at p. 1592; accord, *Giebeler v. M&B Associates* (9th Cir.2003) 343 F.3d 1143, 1147 (*Giebeler*) [same required for FHA claim].) Proof of a reasonable accommodation claim does not turn on intent or motive. (*Peebles v. Potter* (8th Cir. 2004) 354 F.3d 761, 767.)

13

Slotkin's disability status, and defendants' knowledge and refusal to grant her requested accommodation, is not in dispute. What is in dispute is whether the TAC alleged Slotkin's requested accommodation was necessary to afford her an equal opportunity to use and enjoy her dwelling. We conclude it did.

"[T]he concept of necessity requires at a minimum the showing that the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." (*Bronk v. Ineichen* (7th Cir. 1995) 54 F.3d 425, 429 (*Bronk*).) The TAC alleges facts meeting this standard. Slotkin informed defendants of weightlifting restrictions imposed by her physical disabilities. By providing bellman services, defendants would provide a "crucial" accommodation by assisting Slotkin with weightlifting around her condominium.

Relying on *Auburn Woods*, defendants contend Slotkin's discrimination claim is legally deficient because no allegations demonstrate "the requested accommodation is necessary." The *Auburn Woods* court did not impose an unconditional standard of necessity. Instead, it reasoned the requested accommodation must be "necessary to afford an equal opportunity to use and enjoy the dwelling." (See *Auburn Woods*, *supra*, 121 Cal.App.4th at p. 1592.) The cases on which the court relied to impose this requirement are in accord. (See *Giebeler*, *supra*, 343 F.3d at p. 1147 ["accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling"]; *Janush v. Charities Housing Development Corp.* (N.D.Cal. 2000) 169 F.Supp.2d 1133, 1135 [same].) By alleging defendants provided bellman services "to every resident of the

14

Property except [her]," Slotkin established how the services were necessary to afford her an equal opportunity of enjoyment.

Similarly, defendants contend Slotkin's disability claim is legally insufficient in failing to establish a *reasonable* accommodation. Though defendants might later prove this to be true, it is not a basis on which to sustain a demurrer with prejudice. Whether an accommodation is reasonable and causes no undue hardship "is a question of fact, not a matter of law." (*Auburn Woods*, *supra*, 121 Cal.App.4th at pp. 1595, 1593 ["Each inquiry is fact specific and requires a case-by-case determination"].) This requirement "does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." (*Bronk*, *supra*, 54 F.3d at p. 429.)

On the facts alleged, Slotkin established a reasonable accommodation request, namely, to be provided with the same bellman service that all other residents receive. (See *U.S. Airways, Inc. v. Barnett* (2002) 535 U.S. 391, 405 [plaintiff may demonstrate reasonableness of accommodation by proof defendant "already [permitted] exceptions such that, in the circumstances, one further exception is unlikely to matter"].) Thus, we conclude the court erred in sustaining the demurrer to the second cause of action for disability discrimination.

## DISPOSITION

The judgment is reversed. The order sustaining the demurrer to the first cause of action for breach of contract without leave to amend is affirmed. The order sustaining the demurrer to the second cause of action for disability discrimination is reversed. The trial court is directed to enter a new order sustaining the demurrer to the first cause of action without leave to amend and overruling the demurrer to the second cause of action. The parties shall bear their own costs on appeal.

                                        MORI, J.

We concur:


CURREY, P. J.



COLLINS, J.

16